244 N.J. Super. 329 (1990)
582 A.2d 821
DEPARTMENT OF COMMUNITY AFFAIRS, DIVISION OF HOUSING AND DEVELOPMENT, COMPLAINANT-RESPONDENT,
v.
THE ATRIUM PALACE SYNDICATE, RESPONDENT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted October 17, 1990.
Decided November 14, 1990.
*330 Before Judges KING, LONG and R.S. COHEN.
Lasser, Hochman, Marcus, Guryan and Kuskin, attorneys for appellant (Bruce H. Snyder on the brief).
Robert J. Del Tufo, Attorney General, attorney for respondent (Michael R. Clancy, Assistant Attorney General, of counsel, Eliaser Chaparro, Deputy Attorney General, on the brief).
Sills Cummis Zuckerman Radin Tischman Epstein & Gross, attorneys for intervenor Eric Zorn (Joseph L. Buckley of counsel and Mark E. Duckstein on the brief).
William Pagano, attorney for intervenor Mercedes Rudelli.
Waters, McPherson, McNeill, attorneys for intervenors Joseph and Vera Wiesel (Frank J. Zazzaro, of counsel and on the brief).
Smith, Don, Alampi, Scalo, Diktas, D'Argenio & Habeeb, attorneys for intervenors (Philip Scalo of counsel and Frank Terranella on the brief).
R.S. COHEN, J.A.D.
The Planned Real Estate Development Full Disclosure Act ("the Act") was enacted in 1977 to regulate the sale of residential real estate developments of 100 units or more in which unit owners share common elements, facilities, areas or interests. N.J.S.A. 45:22A-21 et seq.; L. 1977 c. 419. The Act provides for enforcement by the Division of Housing and Development of the Department of Community Affairs. N.J.S.A. 45:22A-24. Authorized regulations appear at N.J.A.C. 5:26-1.1 et seq. Among other things, they may contain "provisions to insure that all contracts between developer and purchaser are fair and reasonable." N.J.S.A. 45:22A-35. One of the regulations adopted pursuant to that mission is N.J.A.C. 5:26-6.5(a)2, which declares unfair and unreasonable a contract provision "requiring the purchaser to close prior to the issuance of a temporary certificate of occupancy on his unit." Note also that *331 N.J.A.C. 5:23-2.23(a) prohibits occupying a unit without a certificate of occupancy.
Atrium Palace Syndicate ("APS") contracted with a number of purchasers for the sale of residential condominium units in a building under construction in Fort Lee. The contracts contained the following relevant provisions:
5. The time for payments of the purchase price by the Purchaser hereunder is of the essence of this Agreement. In the event that the Purchaser shall fail to make timely payments as herein provided, or shall fail or refuse to execute any instruments required to close this transaction or refuse to pay any costs or other sums required pursuant to this Agreement, or perform any of its obligations hereunder, and shall fail to correct any such default within 5 days after the Seller has given the Purchaser written notice of such default, then the Seller shall have the right and option to declare this Agreement terminated and of no further force and effect, and retain all moneys paid by the Purchaser as and for liquidated and agreed upon damages which the Seller shall have sustained and suffered as a result of the Purchaser's default, and thereupon the parties hereto will be released and relieved from all obligations hereunder. Anything herein to the contrary notwithstanding, Seller's damages in the event of Purchaser's default shall be limited to ten percent (10%) of the purchase price of the Unit.
9. The availability of the Mortgage Financing herein contemplated, and the obligations of the Purchaser hereunder depend upon the financial responsibility of the Purchaser, and inasmuch as the Purchaser is initially acquiring the Condominium Unit for his or her personal use as his or her principal residence, this Agreement shall not be assigned or transferred by the Purchaser without the prior written consent of the Seller. Any attempted assignment in violation or contravention of this paragraph assignment in violation or contravention of this paragraph shall be null and void, and of no force or effect.
14. In the event substantial completion of construction and closing is delayed due to delay of issuance of permits, inspections, delays in construction, or due to inclement weather, shortage of labor, strikes, lockouts, or other labor disputes, emergencies, governmental regulations, shortages of materials, acts of God or any other reason it is agreed that the completion date and closing shall be postponed for the period of time lost by the Seller by reason of any or all of the foregoing causes; it is agreed that the Seller shall not be liable to the Purchaser for any damages in the event date of completion and closing is so postponed; however, after the expiration of said postponed period of time, which postponed period shall not exceed one hundred eighty (180) days, the Purchaser may elect to terminate this Subscription and Purchase Agreement on less than ten (10) days written notice to the Seller, without penalty. Seller shall immediately return all deposit monies, with interest, to Purchaser.
15. Seller's Deed of conveyance shall be delivered and received and closing of title shall occur on or before the 1st day of October, 1988, on which date it is anticipated that there shall be at least substantial completion of the construction *332 of the dwelling Unit.... Substantial completion of the construction of the dwelling unit shall be evidenced by the issuance of a temporary certificate of occupancy by the Building Department of the Borough of Fort Lee.
APS was not ready to convey title on the scheduled date of October 1, 1988. The 180 day postponement contemplated by Paragraph 14 expired on March 30, 1989. On that day, APS did not have a temporary certificate of occupancy ("TCO") on any of the units that are involved in this appeal.
Several buyers demanded their deposits back, and complained to the Division of Housing and Development when APS refused to return their money. The Division issued an order[1] requiring APS to return a number of deposits on units on which no TCO was issued on March 30, 1989. APS was given a hearing before the Office of Administrative Law, resulting in an initial decision upholding the order as to the units involved in this appeal. The Commissioner of DCA adopted the initial decision, and APS applied to this court for leave to appeal and for a stay. The applications were denied. APS then sought emergent relief from the Supreme Court, which granted the stay and ordered us to accelerate the appeal. We will assume that, although the Supreme Court did not reverse our denial of leave to appeal, the spirit of its order is served by our granting leave to appeal, and we do so now.
APS first argues that the units in question were in fact substantially completed on March 30, 1989 as Paragraph 15 of the contracts required. APS further contends that although substantial completion may conclusively "be evidenced" by issuance of a TCO, absence of a TCO is not fatal; substantial completion may still "be evidenced" by other proofs. At the least, therefore, a material factual question is presented whether the units were substantially completed.
*333 Not so. The contract says that substantial completion "shall be evidenced" by issuance of a TCO. The simple meaning of the words is that a TCO is essential, and not just one means of proving a significant fact. Such an interpretation also comports with the regulatory disapproval of contract provisions requiring the buyer to close before issuance of a TCO, N.J.A.C. 5:26-6.5(a)2, and the prohibition against occupancy without a TCO. N.J.A.C. 5:23-2.23(a).
APS next argues that it was deprived of the opportunity to explore the material factual issue whether the buyers were ready, willing and able to perform on the scheduled closing date. We agree with the DCA that the issue is not material. APS promised completion and closing in October 1988. It was not yet able to perform when the deadline of March 30, 1989 arrived. The remedy sought by the buyers and granted by DCA was not breach-of-contract damages but rather rescission and a return of their deposits. Bernstein v. Kohn, 96 N.J.L. 223, 114 A. 543 (E & A 1921); Hodes v. Dunsky, 5 N.J. Super. 333, 69 A.2d 34 (App.Div. 1949), aff'd after remand, 15 N.J. Super. 27, 83 A.2d 17 (App.Div. 1951). Compare Caporale v. Rubine, 92 N.J.L. 463, 105 A. 226 (E & A 1918). If damages were sought, the question whether the buyers were ready or able to perform might be material. But here there is no question but APS's deadline for performance was March 30, it was not ready to perform, and the DCA order gives buyers only their money back. In these circumstances, the buyers' readiness or ability to perform on March 30 is not material.
For the same reasons, the buyers' alleged "lack of good faith and fair dealing" does not bar summary judgment in their favor. Defendant argues the buyers represented in Paragraph 9 of their contracts that they would use the units for their principal residences, and that nevertheless some of them put their units on the market before closing for sale at a profit, proving that they really bought only to speculate.
*334 It is unclear what principle would permit the seller of property to retain a 10% deposit in such circumstances. Beyond, that, however, the contractual provision is not constructed like a representation. In addition, it prohibits only transfers without defendant's consent. Moreover, defendant had contracted to sell some buyers more than one unit each. In the circumstances, defendant's argument that buyer-speculator shows such bad faith that he should forfeit a 10% deposit is frivolous.
Affirmed.
NOTES
[1] APS has not challenged the Division's authority to make such an order. See N.J.S.A. 45:22A-23a.