614 A.2d 1069

DEPARTMENT OF COMMUNITY AFFAIRS, DIVISION OF HOUS-
ING AND URBAN DEVELOPMENT, COMPLAINANT–RESPON-
DENT, v. THE ATRIUM PALACE SYNDICATE, RESPONDENT–
APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued September 22, 1992—Decided October 20, 1992.

Before Judges PRESSLER, R.S. COHEN and MUIR, Jr.

*Philip Scalo* argued the cause for intervenors-appellants.

*William Pagano* argued the cause for intervenors-appellants.

*Bruce Snyder* argued the cause for respondent-appellant Atrium Palace Syndicate (*Lasser, Hochman, Marcus, Guryan & Kuskin*, attorneys, *Bruce Snyder* on the brief).

*Eliaser Chaparro*, Deputy Attorney General, argued the cause for complainant-respondent Department of Community Affairs (*Robert J. Del Tufo*, Attorney General, attorney, *Mary C. Jacobson*, Deputy Attorney General, of counsel and *Eliaser Chaparro* on the brief).

The opinion of the court was delivered by

COHEN, R.S., J.A.D.

The history of the Atrium Palace residential condominium development, the intervenors' contracts, the failure of Atrium Palace Syndicate to complete many of the units it sold, and the enforcement efforts of the buyers and the Department of Community Affairs are all described in our prior opinions. 244 *N.J.Super.* 329, 582 *A.*2d 821 (App.Div.1990), *certif. denied,* 126 *N.J.* 317, 598 *A.*2d 878 (1991); 247 *N.J.Super.* 511, 589 *A.*2d 1046 (App.Div.), *certif. denied,* 126 *N.J.* 338, 598 *A.*2d 895 (1991). We will not repeat that history here. These appeals are from two Department of Community Affairs decisions.

One of them held Atrium Palace Syndicate (APS) liable for penalties of $100,000. The other ruled that proceedings in the Department were not appropriate to assess APS double damages and attorneys' fees in favor of the intervenor buyers, but that only a court could order those remedies. We consolidate the three appeals for the purpose of decision. We reverse the penalty imposition, and we affirm the Department's denial of jurisdiction to assess double damages and attorneys' fees.

The penalty proceedings offer a cornucopia of procedural and substantive issues. We find it unnecessary to deal with all of them, but we do not imply that they are insignificant.

The two violations charged in the Department's decision were:

(a) APS violated *N.J.A.C.* 5:26–6.5(a)2 by failing to secure temporary certificates of occupancy for the condominium units it scheduled for closing for March 30, 1989;

(b) APS violated *N.J.A.C.* 5:23–2.23(a) by scheduling closings on units that could not be occupied.

The charges in the Department's initial notices of violation were three in number, and were different from the charges ultimately upheld by the Commissioner. We pass the procedural issues presented by this metamorphosis.

Neither of the violations ultimately found will support the penalties imposed by the Department. *N.J.A.C.* 5:26–6.5(a)2 is a regulation adopted pursuant to the Planned Real Estate Development Full Disclosure Act (PREDFDA). *N.J.S.A.* 45:22A–21 to –42. The cited regulation proscribes a list of contractual terms, and does not deal with sponsors' post-contract nonperformance. It proscribes contracts requiring a closing before issuance of a temporary certificate of occupancy for the unit. APS's contracts plainly did not violate the proscription. What APS did was secure documents that were entitled temporary certificates of occupancy but which barred occupancy until vital kitchen installations were completed. We held that such certificates did not evidence completion of the units

and thus obligate the buyers to close, but we certainly did not say that they created defects in the contracts.[1] 244 *N.J.Super.* at 331–33, 582 *A.*2d 821.

*N.J.A.C.* 5:23–2.23 bars use or occupancy without certificates of occupancy. It is part of the Uniform Construction Code and thus not a proper basis for penalty proceedings under *N.J.S.A.* 45:22A–38. Such proceedings are expressly confined to violation of "any provision of this act [PREDFDA] or of a rule adopted under it." The proceedings did not meet procedural standards under the Uniform Construction Code. *See N.J.A.C.* 5:23–2.30, *et seq.* In addition, since no unlawful use or occupancy occurred, despite the issuance of "non-occupancy" certificates of occupancy, the regulation was not violated.

 The Department ruled that it had no statutory authority to award buyers double damages and attorneys' fees. We agree.

Double damages and attorneys' fees may be awarded pursuant to *N.J.S.A.* 45:22A–37, which speaks of "action," "actions," "cause of action," "court costs" and, on two occasions, "the court." There is no mention of the administrative agency or the Commissioner. The next section, *N.J.S.A.* 45:22A–38, concerns fines for violations, and very clearly authorizes the agency and the Commissioner to initiate and process administrative proceedings to assess penalties, and, if necessary, to collect in summary court proceedings. There is nothing at all in the statute authorizing the agency to entertain and determine buyers' claims for damages. Recall that the agency order to APS

---

[1] The Department argues before us that APS also violated *N.J.A.C.* 5:26–6.5(a)9 which prohibits contract clauses providing that a closing may be indefinitely delayed as the result of delay in construction, or in the issuance of permits or inspections. The Department's decision did not rest on that provision. In addition, it proscribes contract terms, and does not purport to regulate post-contract behavior.

was only to return deposits. It did not purport to deal with the question whether the buyers had sustained damages resulting from APS's non-performance. Clearly, the statutory structure dictates that double damage actions must be prosecuted in the Superior Court, and not in administrative proceedings.

The apparently simple division of authority between court and agency can complicate a wronged buyer's pursuit of redress. Here, the agency initiated its own proceedings to penalize APS and to require return of buyers' deposits. Many buyers decided to intervene in those administrative proceedings to protect their individual interests. They had substantial deposits at stake; their desire to participate was understandable, and there is no reason to discourage such efforts.

The buyers also initiated Superior Court actions for damages, which are now stayed pending disposition of arbitrations. Those actions sought the private remedies prescribed by statute, and they are not barred by the buyers' election to join the administrative proceedings.

The Legislature could have written PREDFDA to avoid this kind of duplication and potential conflict of litigation effort. It did not do so, however, and we cannot rewrite the statute. *Compare State v. Darby*, 246 *N.J.Super.* 432, 587 *A.*2d 1309 (App.Div.), *certif. denied*, 126 *N.J.* 342, 598 *A.*2d 898 (1991). To avoid problems, however, we suggest that participants in these kinds of disputes seek an order staging the proceedings that will avoid running simultaneously on two non-parallel tracks. The disappointed buyers' court action for private contractual and/or statutory remedies ordinarily ought to have the right of way over administrative penalty proceedings. Each case has its own needs, however, and no single, unvarying approach can be prescribed in advance.

The orders in A–5009–90T1 and A–5034–90T1 are affirmed. We reverse in A–1932–91T1.