272 N.J. Super. 330 (1994)
639 A.2d 1146
DAVID N. CYBUL, MYRON LINDER AND LEILA LINDER, ARTHUR STERN AND ALICE STERN, MERCEDES RUDELLI, PLAINTIFFS-APPELLANTS,
v.
THE ATRIUM PALACE SYNDICATE, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued April 5, 1994.
Decided April 21, 1994.
*332 Before Judges PRESSLER, DREIER and KLEINER.
William Pagano argued the cause for appellants (Judith J. Mender, on the brief).
Bruce H. Snyder argued the cause for respondent (Lasser, Hochman, Marcus, Guryan and Kuskin, attorneys; Mr. Snyder, of counsel and on the brief).
The opinion of the court was delivered by PRESSLER, P.J.A.D.
Plaintiffs appeal from an order of the Law Division confirming an arbitration award and denying their motion for vacation of the award. We reverse.
This controversy arises out of the marketing of condominium units in Fort Lee by defendant The Atrium Palace Syndicate (APS). When APS, despite its having made time of the essence, was unable to close title in accordance with the terms of its contracts with the unit purchasers by reason of its failure to have timely obtained either a certificate of occupancy or an adequate temporary certificate of title, various of the purchasers, including the plaintiffs here, demanded the return of their substantial deposits. APS's refusal resulted in administrative proceedings initiated by the Commissioner of Community Affairs under the Planned Real Estate Development Full Disclosure Act (PREDFDA), N.J.S.A. 45:22A-21 to -42, in which various of the *333 purchasers, including these plaintiffs, intervened. Some of the purchasers, including these plaintiffs, also commenced actions in the Law Division against APS seeking both common law and statutory remedies against it. We have three times previously reviewed the administrative proceedings. See Department of Comm. Affairs v. Atrium Palace [I], 244 N.J. Super. 329, 582 A.2d 821 (App.Div. 1990), certif. denied, 126 N.J. 317, 598 A.2d 878 (1991); Department of Comm. Affairs v. Atrium Palace [II], 247 N.J. Super. 511, 589 A.2d 1046 (App.Div.), certif. denied, 126 N.J. 338, 598 A.2d 895 (1991); Department of Comm. Affairs v. Atrium Palace [III], 259 N.J. Super. 578, 614 A.2d 1069 (App.Div. 1992). To the extent here relevant, we confirmed, in those three opinions, the unjustifiability of APS's refusal to return the deposits and its insistence that the purchasers, on pain of loss of their deposits, close title without issuance of the requisite certificate of occupancy. This appeal arises out of the separate Law Division damages action commenced by plaintiffs David Cybul, Myron and Leila Linder, Arthur and Alice Stern, and Mercedes Rudelli.
In brief, plaintiffs' individual complaints, filed in April and May 1989 and subsequently consolidated, sought return of their deposits with interest, compensatory damages, punitive damages, double damages and attorney's fees under PREDFDA (N.J.S.A. 45:22A-37), and treble damages and attorney's fees under the Consumer Fraud Act, N.J.S.A. 56:8-1 to -21. The Commissioner's initial order requiring APS to return the deposits to these and other purchasers was entered on May 25, 1989. APS appealed that order, the dispute was transmitted to the Office of Administrative Law, plaintiffs intervened in the administrative proceedings, and that controversy was not finally concluded as to these plaintiffs until July 1991 when the New Jersey Supreme Court declined to review our judgment in Atrium [I]. It was only then, more than two years after APS's wrongful refusal to return the deposits, that it finally refunded those sums, with interest, to plaintiffs. By that time, the prosecution of the lawsuit had been stayed on APS's motion to enforce its right to contractual arbitration as provided for in the contracts of sale. The matter was already in the *334 process of arbitration when the deposits were returned. We note, moreover, that plaintiffs' intervention in the administrative proceedings did not constitute a waiver by them of their right to seek damages and counsel fees in the Law Division. That was, indeed, our holding in Atrium [III].
In any event, the arbitrators' award was finally filed in February 1993. The award denied both damages and counsel fees under the Consumer Fraud Act for the stated reason that PREDFDA was exclusive as to these remedies. The award then denied damages and counsel fees under PREDFDA on the articulated basis that plaintiffs had not relied on APS's "untrue statements of material fact, omitted material facts and ... misleading statements." The award does not specify what these false statements and misrepresentations were, except to note that the only conduct of APS actionable under PREDFDA occurred within the period of time prior to the last week of March 1989 when time of the essence closings had been scheduled and insisted upon by APS despite its failure to have obtained the requisite certificates of occupancy. Plaintiffs were not only denied recovery of their considerable counsel fees but they were then billed by the arbitrators for a share of the considerable arbitration fees and expenses.
Following entry of the award, plaintiffs moved for its vacation and defendant moved for its confirmation. Plaintiffs appeal from the grant of defendant's motion.
We evaluate the vulnerability of the arbitrators' award in light of the principles enunciated by Perini Corp. v. Greate Bay Hotel & Casino, Inc., 129 N.J. 479, 610 A.2d 364 (1992). When a private contractual arbitration award is challenged on the basis of legal error, we understand Perini to require the award to be sustained "as long as the determination is reasonably debatable." Id. at 493, 610 A.2d 364. Thus, as the Court made plain, the scope of judicial review is limited to the need "to safeguard against interpretive error that may be characterized on its face as gross, unmistakable, undebatable, or in manifest disregard of the applicable law and leading to an unjust result." Id. at 496, 610 A.2d 364.
*335 We are persuaded that the arbitrators' error respecting the applicability of the Consumer Fraud Act to this controversy meets the Perini remedial standard. The clear intent of both PREDFDA and the Consumer Fraud Act was to provide consumers with additional and cumulative remedies and in no way to curtail their remedial opportunities for the redress of fraud and other unconscionable practices afforded by any other statute or the common law. Thus PREDFDA expressly authorizes the court to "frame such other relief" in addition to the double damages remedy "as may be appropriate in the circumstances." N.J.S.A. 45:22A:37(b). The Consumer Fraud Act also expressly provides that its treble damage and attorney fee remedies shall be available "in addition to any other appropriate legal or equitable relief." N.J.S.A. 56:8-19. Moreover, the Consumer Fraud Act has been held to apply in other contexts in which the transaction is governed by a distinct statutory complex. See, e.g., 49 Prospect Street v. Sheva Gardens, 227 N.J. Super. 449, 547 A.2d 1134 (App.Div. 1988) (Consumer Fraud Act applies to residential landlord-tenant relationships subject to other statutory constraints). We think it plain, therefore, that the arbitrators committed a gross error of law and a concomitant injustice to plaintiffs in refusing to consider whether APS's conduct constituted a remedial consumer fraud under N.J.S.A. 56:8-2.
We are also satisfied that plaintiffs were, at least prima facie, entitled to a recovery under the Consumer Fraud Act. There is, first, no question but that its scope expressly encompasses unconscionable commercial practices in connection with the sale of real estate. N.J.S.A. 56:8-2. See also, generally, Chattin v. Cape May Greene, Inc., 243 N.J. Super. 590, 581 A.2d 91 (App.Div. 1990), aff'd o.b., 124 N.J. 520, 591 A.2d 943 (1991); New Mea Constr. Corp. v. Harper, 203 N.J. Super. 486, 497 A.2d 534 (App. Div. 1985). Nor is there any question that even if plaintiffs had sustained no compensatory damages at the time the award was rendered by reason of the return to them of their deposits plus interest during the pendency of the proceeding, the attorney-fee *336 remedy would nevertheless be available to them if they had been the victims of consumer fraud.[1]Performance Leasing v. Irwin Lincoln-Mercury, 262 N.J. Super. 23, 33-34, 619 A.2d 1024 (App. Div.), certif. denied, 133 N.J. 443, 627 A.2d 1148 (1993).
Finally, we are satisfied that the conduct of APS of which plaintiffs complain is susceptible to a finding of unconscionable practices within the intendment of the Act. As we view the matter, and as apparently found by the arbitrators, the gravamen of APS's objectionable conduct was its insistence that plaintiffs either close title or forfeit their deposits despite the regulatory consequence of N.J.A.C. 5:23-2.23, which prohibits the occupancy of the units without a certificate of occupancy or an adequate temporary certificate.[2]See further Atrium [III], 259 N.J. Super. at 580-581, 614 A.2d 1069. Then, when plaintiffs refused to close, as was their right in the circumstances, APS claimed the right to the deposits as liquidated damages for plaintiffs' asserted breach, subjecting them to the ensuing years of litigation and administrative proceedings with their concomitant financial and personal burdens in order to make themselves whole.
Since the same conduct that is actionable under the Consumer Fraud Act is asserted to be actionable as well under PREDFDA *337 and since the former provides a greater remedy than the latter, we need not consider whether the arbitrators also committed a gross error of law in rejecting plaintiffs' PREDFDA remedy claims. We do note, however, that those claims were apparently rejected because of the arbitrators' conclusion that plaintiffs had not relied on APS's misrepresentations. Since the arbitrators did not specify the substance of the misrepresentations they found APS to have made, we cannot know what they had in mind with respect to their reliance finding. Nevertheless, we are satisfied that reliance is irrelevant to APS's actionable conduct, except to the extent that plaintiffs may have relied on APS's good faith when the contracts of sale were entered into and on the sincerity of APS's undertaking to comply with all the legal obligations imposed upon it by PREDFDA and its implementing regulations. Once APS decided to ride roughshod over plaintiffs' rights by insisting they close without certificates of occupancy and attempting to retain their deposits upon their refusal to do so, the question of plaintiffs' reliance did not enter into the relationship. Knowing that APS was violating their statutory and contractual rights afforded them no protection against the consequences of that violation. In any event the degree of congruency in the nature of the actionable conduct under the PREDFDA and the Consumer Fraud Act and their overlapping remedies result in mooting the issues respecting the arbitrators' determination of the PREDFDA issues.
We reverse the order appealed from and remand to the Law Division for remand by it to the arbitrators for their consideration of plaintiffs' remedies under the Consumer Fraud Act.
NOTES
[1] The record does not indicate what, if any, proofs of compensatory damages other than the loss of the use of their deposit money may have been incurred by plaintiffs. We note, however, that there are customarily some damages incurred as the result of an aborted closing including title search expenses, preclosing costs, and attorney's fees. See also N.J.S.A. 2A:29-1.
[2] An illuminating view of APS's attempted intimidation of the purchasers is afforded by the transcript of the aborted closing with plaintiff Rudelli, APS having taken the singular step of arranging for a certified shorthand reporter to be in attendance. Although APS admitted that it did not have a certificate of occupancy on hand and was unable to say when one would be forthcoming, and despite Rudelli's attorney's statement that "without the Certificate of Occupancy being here you're in breach" and his demand for return of the deposit, APS's attorney announced that the purchaser was in breach by reason of her refusal to close and that "on the instructions of our client ... we intend to release the downpayment [to it] as and for liquidated damages irrespective of your threat of suit, class action or otherwise."