289 N.J. Super. 489 (1996)
674 A.2d 582
JEANNE C. LEMELLEDO, ON BEHALF OF HERSELF AND ALL OTHERS SIMILARLY SITUATED, PLAINTIFF-APPELLANT,
v.
BENEFICIAL MANAGEMENT CORP. OF AMERICA AND BENEFICIAL NEW JERSEY, INC., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued: November 28, 1995.
Decided: April 19, 1996.
*491 Michael D. Donovan (Chimicles, Jacobsen & Tikellis) of the Pennsylvania bar, admitted pro hac vice, argued the cause for appellant (Tomar, Simonoff, Adourian, O'Brien, Kaplan, Jacoby & Graziano, attorneys; Charles N. Riley and Donna Siegel Moffa on the brief).
Burt M. Rublin (Ballard, Spahr, Andrews & Ingersoll) of the Pennsylvania bar, admitted pro hac vice, argued the cause for respondents (Archer & Greiner, attorneys; Sean T. O'Meara on the brief).
*492 Jamieson, Moore, Peskin & Spicer filed a brief amici curiae for the New Jersey Bankers Association and New Jersey Financial Services Association (Michael F. Spicer on the brief).
Before Judges STEIN, KESTIN and CUFF.
The opinion of the court was delivered by ARNOLD M. STEIN, J.A.D.
Plaintiff Jeanne C. Lemelledo filed a class action against defendants Beneficial Management Corp. of America and Beneficial New Jersey, Inc., (collectively "Beneficial") claiming Beneficial violated the Consumer Fraud Act, the Consumer Loan Act and the criminal usury statute. Lemelledo also alleged breach of contract, conversion and common law fraud. The Law Division judge granted Beneficial's motion to dismiss the Consumer Fraud Act and usury counts for failure to state a claim upon which relief can be granted. R. 4:6-2(e).
We reverse the dismissal of the Consumer Fraud count and affirm the dismissal of the usury count.
On this motion to dismiss for failure to state a claim, we examine the legal sufficiency of the facts alleged in the complaint. R. 4:6-2(e); Printing Mart-Morristown v. Sharp Electronics Corp., 116 N.J. 739, 746, 563 A.2d 31 (1989). We accept all facts alleged by plaintiff as true, giving plaintiff "the benefit of all inferences that may be drawn from those facts." Feinberg v. New Jersey Dep't of Environmental Protection, 137 N.J. 126, 129, 644 A.2d 593 (1994).
Beneficial Management Corp. of America and Beneficial New Jersey, Inc. are subsidiaries of Beneficial Corp., a financial services company specializing in consumer loans. Beneficial sells credit insurance policies in conjunction with its loans. There are four basic types of credit insurance: credit life, credit disability, credit property and loss of income. If the borrower defaults, a credit insurance policy will pay the lender the outstanding balance of the loan.
*493 Plaintiff alleges Beneficial engages in "loan packing," a practice by which lenders sell credit insurance policies along with consumer loans through the use of deceptive or coercive marketing practices. Her complaint asserts that credit insurance offers little or no benefit to borrowers, but primarily protects creditors. In addition, creditors have other financial incentives for selling the insurance, as they may receive commissions as high as 50% of the premium cost. Because the premiums are usually added to the principal of the loan, creditors also receive more interest income.
Plaintiff alleges credit insurance is often marketed through a "captive insurer," an insurance company affiliated with or owned by the creditor. Beneficial Wesco, The Central National Life Insurance Company of Omaha, and the First Central National Life Insurance Company of New York are three subsidiaries of Beneficial Corp. that sell credit insurance. In 1993, $80.7 million in credit insurance premiums were written through Beneficial's insurance subsidiaries and $11.6 million through non-affiliated insurance companies.
Plaintiff challenges the manner in which Beneficial sells credit insurance policies. She alleges that the typical Beneficial customers are individuals lacking established credit who cannot obtain a loan elsewhere. These individuals often have no knowledge of lending practices and are desperate for money. Beneficial allegedly takes advantage of this vulnerability by misrepresenting the purpose of credit insurance and failing to disclose its hidden benefits for the lender. According to plaintiff, borrowers are given a "negative option" to buy the insurance, since all loans are packaged with credit insurance even if the borrower does not request it.
When the borrower arrives at the loan office to pick up the check, he or she is presented loan documents already filled out to include credit insurance. This makes it appear that the insurance is necessary to obtain the loan. If the borrower questions or objects to the unrequested insurance, the salesperson implies that the borrower will not be given the loan proceeds at that time, but *494 will have to return later. Plaintiff alleges that Beneficial uses these hard sell tactics to exploit the borrower's reluctance to walk away from the loan.
Plaintiff claims she was a victim of Beneficial's coercive tactics. On July 19, 1992, she applied for a $2000 loan from Beneficial to pay for her daughter's college tuition. The application form required her to list, among other things, personal property and household goods. After she was told that her loan was approved, plaintiff returned to Beneficial's office expecting to be issued a $2,000 check. Instead, she was given a form entitled "Disclosure of Credit Costs," to which pre-completed forms for credit life insurance, disability insurance, and personal property insurance were attached. She was also given a Certificate of Insurance for credit life and disability insurance from The Central National Life Insurance Company of Omaha, a Beneficial subsidiary, and a personal property insurance policy from the American Centennial Insurance Company, an unaffiliated company.
The disclosure form identified the "amount financed" as $2,538.47. It identified $335.28 as "Amount Paid to Others on Your Behalf," representing the insurance premiums, and $2,203.19 as "Amount Given to You Directly by Us." The loan was to be repaid in 36 monthly installments of $105 at a 28% annual percentage rate. The form also stated that plaintiff's loan was "secured" by "certain" unidentified "household items." Plaintiff was not told that federal regulations prohibit Beneficial from taking security interests in certain household and personal items. 16 C.F.R. 444.2(a)(4).
Plaintiff claims she never requested any insurance, nor did Beneficial employees discuss the purpose of or need for insurance before giving her the forms. Plaintiff does not know why she was given $203.19 more than the $2,000 she requested.
Plaintiff prepaid the $2,203.19 shortly after obtaining the loan. Beneficial then sent her four coupons for $100 each, representing the insurance premiums and accrued interest. Plaintiff made two payments but refused to pay anything more. Beneficial sued to *495 recover the two remaining payments but then voluntarily dismissed the case. Plaintiff's lawsuit followed.
The Consumer Fraud Act, N.J.S.A. 56:8-1 et seq., provides:
The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice....
[N.J.S.A. 56:8-2.]
The Act was passed in 1960 "to permit the Attorney General to combat the increasingly widespread practice of defrauding the consumer." Cox v. Sears Roebuck & Co., 138 N.J. 2, 14, 647 A.2d 454 (1994) (quoting Senate Committee, Statement to the Senate Bill No. 199 (1960)). It was "initially designed to combat `sharp practices and dealings' that victimized consumers by luring them into purchases through fraudulent or deceptive means." Id. at 16, 647 A.2d 454 (quoting D'Ercole Sales, Inc. v. Fruehauf Corp., 206 N.J. Super. 11, 23, 501 A.2d 990 (App.Div. 1985)). In 1971 it was amended to include a private cause of action with treble damages, giving New Jersey "one of the strongest consumer protection laws in the Nation." Id. at 15, 501 A.2d 990 (quoting Governor's Press Release for Assembly Bill No. 2402, at 1 (Apr. 19, 1971)). As a remedial statute, the Act "should be construed liberally in favor of consumers." Id. at 15, 501 A.2d 990.
We reject Beneficial's argument that it is exempt from the Consumer Fraud Act because it is a highly regulated business.
In Daaleman v. Elizabethtown Gas Co., 77 N.J. 267, 272-73, 390 A.2d 566 (1978), the New Jersey Supreme Court held that the Consumer Fraud Act did not apply to a public utility accused of manipulating a tariff mechanism in its monthly bills to consumers. The Court concluded that because the tariff mechanism was permitted by an administrative order of the Board of Public *496 Utility Commissioners (PUC), interpreting the order should be left to the PUC's exclusive jurisdiction. Id. at 273, 390 A.2d 566. Because the Division of Consumer Protection administers the Consumer Fraud Act, applying the Act to a public utility would subject it to potentially conflicting determinations by separate state agencies. Id. at 272, 390 A.2d 566.
We applied Daaleman's reasoning to the insurance industry in Pierzga v. Ohio Casualty Group of Ins. Cos., 208 N.J. Super. 40, 47, 504 A.2d 1200 (App.Div.), certif. denied, 104 N.J. 399, 517 A.2d 402 (1986):
Considerations similar to Daaleman are applicable here.... [T]he insurance industry is already heavily regulated by the Department of Insurance. It thus appears that exclusive regulatory jurisdiction of insurance companies, at least with respect to the payment of claims, is within the Department of Insurance.
More recently, we applied Daaleman's reasoning to hospitals, holding them exempt from the Consumer Fraud Act, in part because the State Department of Health is the "sole agency in charge of supervising hospitals and related health care services and facilities." Hampton Hospital v. Bresan, 288 N.J. Super. 372, 380, 672 A.2d 725 (App.Div. 1996).
Daaleman, Pierzga and Hampton Hospital each involved entities subject to the exclusive jurisdiction of one administrative agency, a circumstance not present here. As Beneficial concedes, it is subject to a myriad of statutory schemes and regulations administered by both the Department of Insurance and the Department of Banking.
Although it is not an insurance company, Beneficial is a licensed insurance producer pursuant to the New Jersey Insurance Producer Licensing Act, N.J.S.A. 17:22A-1 to -25, which permits it to sell credit insurance. Its sale of credit insurance subjects it to the Insurance Trade Practices Act, N.J.S.A. 17B:30-1 to -22, which "regulate[s] trade practices in the business of life insurance, health insurance, and annuities"; and arguably to the Credit Life and Health Insurance Act, N.J.S.A. 17B:29-1 to -13, which defines and regulates the terms of credit insurance. These statutory schemes subject Beneficial to the jurisdiction of the Department of Insurance. *497 Although it is not a bank, Beneficial makes consumer loans and is subject to the Consumer Loan Act, N.J.S.A. 17:10-1 to -21. The Act subjects Beneficial to the jurisdiction of the Department of Banking. Beneficial is therefore already subject to the jurisdiction of at least two administrative agencies.
Beneficial cannot complain that applying the Consumer Fraud Act would subject it to the jurisdiction of too many administrative agencies. In 49 Prospect St. Tenants Ass'n v. Sheva Gardens, Inc., 227 N.J. Super. 449, 469, 547 A.2d 1134 (App.Div. 1988), we held that the Consumer Fraud Act applied to the landlord-tenant relationship and was not preempted by the "myriad of legislation dealing with the landlord-tenant relationship." Noting that securities and insurance industries are primarily controlled by regulatory agencies, we distinguished landlord-tenant disputes because "there is no single administrative forum regulating all of the acts and practices in the landlord-tenant area, nor a single forum to provide relief." Id. at 468-69, 547 A.2d 1134. Similarly, here there is no single forum regulating the acts underlying plaintiff's complaint.
Moreover, the acts complained of here differ substantially from those alleged in Daaleman, Pierzga and Hampton Hospital. In each of those cases, the alleged unlawful act did not fit the traditional understanding of the type of acts prohibited by the Consumer Fraud Act.
In Daaleman, the Court held that by using the tariff mechanism in its monthly billings, the utility
did not engage in a selling or advertising practice within the meaning of the Consumer Fraud Act. In enacting N.J.S.A. 56:8-1 et seq., the legislative concern was over sharp practices and dealings in the marketing of merchandise and real estate whereby the consumer could be victimized by being lured into a purchase through fraudulent, deceptive or other similar kind of selling or advertising practices.
This is simply not the present case. Here involved are adjustments in defendant utility's billings as a result of variations in the costs of it of purchasing and storage gas supplies.
[Daaleman, supra, 77 N.J. at 271, 390 A.2d 566.]
*498 Pierzga involved an insurance carrier's alleged wrongful failure to pay personal injury protection benefits. Pierzga, supra, 208 N.J. Super. at 41-42, 504 A.2d 1200. We found the situation inappropriate for invoking the Consumer Fraud Act, noting that "[t]his case does not involve a case of a consumer being victimized by unscrupulous or fraudulent marketing practices." Id. at 47, 504 A.2d 1200.
In Hampton Hospital, we declined to apply the Consumer Fraud Act to a patient's claim that he was coerced into remaining in a hospital's thirty-day rehabilitation program until his insurance coverage ran out. Hampton Hospital, supra, 288 N.J. Super. at 375-76, 672 A.2d 725. We found persuasive a line of Illinois decisions that compared the practice of medicine to the legal profession and "found a distinction between professional malpractice and the type of commercial misdeeds guarded against by the Consumer Fraud Act." Id. at 383, 672 A.2d 725. We also cautioned that our decision was "limited to an exclusion of hospitals from the purview of the Consumer Fraud Act for services rendered to its patients, pursuant to medical judgment." Id. at 383 n. 3, 672 A.2d 725.
As Justice Pashman observed in his concurring opinion in Daaleman:
[A] regulated utility may nevertheless be covered by [the Consumer Fraud] Act when it engages in commercial activity not governed by the comprehensive scheme of PUC rate regulation.... There is no valid reason why a utility, simply by reason of the fact that it is subject to regulation of its rates in the public interest, should be exempt from the Act if it would commit fraud in connection with the marketing of merchandise.
[Daaleman, supra, 77 N.J. at 274, 390 A.2d 566 (Pashman, J., concurring).]
Justice Pashman wrote that a public utility engaging in the advertising and sale of products such as oil burners or electric ranges would not be exempt from the Consumer Fraud Act "merely because of the fortuitous circumstance that the vendor involved is a utility subject to PUC regulation on unrelated matters." Ibid.
*499 The same reasoning applies here. The regulations do not wholly encompass the acts alleged in the complaint. Plaintiff alleges that she and other consumers have been victimized by unscrupulous or fraudulent marketing practices, precisely the type of acts the Consumer Fraud Act prohibits. Beneficial cannot rely on the "fortuitous circumstance" of being subject to various insurance and banking regulations to circumvent the Consumer Fraud Act on a "loan packing" claim.
We also reject Beneficial's argument that it is exempt from the Consumer Fraud Act because the insurance industry is exempt from the Consumer Fraud Act.
Although the New Jersey Supreme Court has expressly declined to rule on whether the Consumer Fraud Act applies to the insurance industry, Rodio v. Smith, 123 N.J. 345, 352, 587 A.2d 621 (1991), lower court decisions have consistently found that the Act does not apply to an insurance company's failure to pay benefits. Pierzga, supra, 208 N.J. Super. at 47, 504 A.2d 1200; Nikiper v. Motor Club of America Cos., 232 N.J. Super. 393, 401, 557 A.2d 332 (App.Div.), certif. denied, 117 N.J. 139, 564 A.2d 863 (1989). However, neither Beneficial Management Corp. of America nor Beneficial New Jersey, Inc., is an insurance company. The credit insurance policies sold to plaintiff were underwritten by insurance companies which are not parties to this lawsuit. Plaintiff is not suing the insurance companies to recover benefits under one of the credit insurance policies, nor is she contesting the cost or terms of the policies. Rather, she accuses Beneficial of unconscionably soliciting the sale of credit insurance along with consumer loans in order to increase profits.
Finally, we reject Beneficial's argument that the Consumer Fraud Act does not apply to the making of loans.
Section 56:8-1(a) of the Consumer Fraud Act defines "advertisement" as including
the attempt directly or indirectly by publication, dissemination, solicitation, indorsement or circulation or in any other way to induce directly or indirectly any person *500 to enter or not enter into any obligation or acquire any title or interest in any merchandise or to increase the consumption thereof or to make any loan.

[N.J.S.A. 56:8-1(a) (emphasis added).]
"The clearest indication of [the Legislature's] intent is the statutory language." Medical Soc. of N.J. v. New Jersey Dep't of Law and Pub. Safety, 120 N.J. 18, 26, 575 A.2d 1348 (1990). It is clear that the Legislature intended that the Consumer Fraud Act apply to the advertisement of loans. "When the Legislature has specifically defined a term, that definition governs." Stevenson v. Keene Corp., 254 N.J. Super. 310, 317, 603 A.2d 521 (App.Div. 1992), aff'd 131 N.J. 393, 620 A.2d 1047 (1993).
Moreover, the Act prohibits fraudulent practices "in connection with the sale or advertisement of any merchandise or real estate." N.J.S.A. 56:8-2. The issue is whether the sale or making of loans is also encompassed in the prohibition, and not simply their advertisement. "Merchandise" is defined as "any objects, wares, goods, commodities, services or anything offered, directly or indirectly to the public for sale." N.J.S.A. 56:8-1(c) (emphasis added). Because merchandise is defined broadly, and because the Act specifically applies to the advertisement of loans, we cannot conclude that the Legislature intended to exclude the sale or making of loans from its scope. Courts must avoid constructions that render any part of a statute "inoperative, superfluous, or meaningless." State v. Reynolds, 124 N.J. 559, 564, 592 A.2d 194 (1991). We should "try to give effect to every word of the statute, and should not assume that the Legislature used meaningless language." Medical Soc. of N.J., supra, 120 N.J. at 26, 575 A.2d 1348. The Act must therefore be read to apply to the advertisement, sale, and making of loans.
Beneficial contends that even if the Consumer Fraud Act applies to loans, only entities other than regulated financial institutions fall within the Act's scope. This argument has no support in the language of the Act. The court's duty "is to construe a statute as it was written and to enforce the legislative will as written, not according to some unexpressed intention." Unsatisfied Claim and Judgment Fund Board v. New Jersey Mfrs. Ins. *501 Co., 270 N.J. Super. 311, 315, 637 A.2d 191 (App.Div.), aff'd 138 N.J. 185, 649 A.2d 1243 (1994).
Beneficial also contends that the claim is preempted by the Consumer Loan Act, because regulations promulgated under the Act prohibit a lender from requiring a borrower to purchase an insurance policy as a condition precedent to a loan, N.J.A.C. 3:17-5.1, and require that the lender clearly explain the benefits and limitations of credit insurance policies, N.J.A.C. 3:17-5.2. Beneficial argues that plaintiff's sole remedy is voiding the contract, as provided under the Consumer Loan Act. N.J.S.A. 17:10-21. That is a toothless remedy, meaningless to a borrower from a small loan company. Plaintiff alleges that she went to Beneficial as a lender of last resort, because she was unable to borrow the money to pay for her daughter's tuition from a bank or credit union. Merely permitting her to void the contract and return the money borrowed would leave plaintiff without adequate legal recourse.
The Consumer Fraud Act is a cumulative remedy. N.J.S.A. 56:8-2.13 provides:
The rights, remedies and prohibitions accorded by the provisions of this act are hereby declared to be in addition to and cumulative of any other right, remedy or prohibition accorded by the common law or statutes of this State, and nothing contained herein shall be construed to deny, abrogate or impair any such common law or statutory right, remedy or prohibition.
N.J.S.A. 56:8-19 provides: "In any action under this section the court shall, in addition to any other appropriate legal or equitable relief, award threefold the damages sustained by any person in interest." N.J.S.A. 56:8-19 (emphasis added). As we held in Cybul v. Atrium Palace Syndicate, 272 N.J. Super. 330, 335, 639 A.2d 1146 (App.Div.), certif. denied, 137 N.J. 311, 645 A.2d 140 (1994), remedies under the Consumer Fraud Act can be awarded in addition to those provided under a separate statutory scheme:
The clear intent of both [the Planned Real Estate Development Full Disclosure Act] and the Consumer Fraud Act was to provide consumers with additional and cumulative remedies and in no way to curtain their remedial opportunities for the redress of fraud and other unconscionable practices afforded by any other statute or the common law.
*502 Although the Consumer Loan Act differs from the Planned Real Estate Development Full Disclosure Act in that section 17:10-21 does not specifically state that the court can impose additional remedies, nothing in the Consumer Loan Act indicates the section was meant to provide an exclusive remedy for defrauded consumers.
Violation of a statute or regulation can serve as evidence of unconscionable practices under the Consumer Fraud Act. In Cybul, we found that defendant's insistence on closing title to a condominium without a certificate of occupancy, in violation of N.J.A.C. 5:23-2.23, was conduct "susceptible to a finding of unconscionable practices within the intendment of the [Consumer Fraud] Act." Id. at 336, 639 A.2d 1146. Similarly here, violations of the regulations promulgated under the Consumer Loan Act can be used to prove fraudulent and unconscionable conduct prohibited by the Consumer Fraud Act.
We affirm the dismissal of plaintiff's usury claim. We reject plaintiff's argument that the commissions earned by Beneficial on its sale of credit insurance should be considered interest for the purpose of New Jersey's usury laws. In Sherman v. Citibank (South Dakota), 143 N.J. 35, 45, 668 A.2d 1036 (1995), the New Jersey Supreme Court held that the definition of interest under the National Bank Act referred only to the periodic interest rate, and not to late fees and other charges associated with a loan. The Court also noted that New Jersey rejects such an expansive definition of interest:
New Jersey's banking statutes also reflect the basic understanding that the notion of interest was conceived and continues to be defined as specific percentage rates, rather than discrete charges, such as late fees, which are not directly related to burrowing money.
[Id. at 61, 668 A.2d 1036.]
The Court cited N.J.S.A. 17:13A-2(g), which excludes credit life insurance premiums from its definition of interest, as well as various other statutes distinguishing discrete charges from interest "by either authorizing or prohibiting certain lending institutions from making such charges." Ibid. As section 17:10-14.1(c) of *503 the Consumer Loan Act expressly permits lenders to retain commissions on the sale of insurance policies in connection with loans, those commissions cannot be included in the definition of interest. N.J.S.A. 17:10-14.1(c). The Law Division judge therefore properly dismissed plaintiff's usury claim.
The dismissal of the Consumer Fraud Act claim is reversed and the dismissal of the usury claim is affirmed.