767 A.2d 979 (2001)
Anthony CARUSO and Carol Caruso, Plaintiffs-Appellants,
v.
RAVENSWOOD DEVELOPERS, INC., and Baruch Schleichorn, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued October 23, 2000.
Decided March 1, 2001.
*980 Philip D. Stern, Millburn, argued the cause for appellants.
*981 Peter W. Till, Springfield, argued the cause for respondents.
Before Judges HAVEY, CUFF and LEFELT.
The opinion of the court was delivered by CUFF, J.A.D.
In this appeal, we must decide whether plaintiffs' statutory claims, specifically consumer fraud and RICO, are included in the scope of the residential construction contract arbitration clause. The claims were submitted to the arbitrator, plaintiffs received a compensatory award but their consumer fraud and RICO claims were denied by the arbitrator. Following confirmation of the award, plaintiffs filed this appeal. We affirm.
On March 4, 1995, plaintiffs Anthony and Carol Caruso executed a contract with defendant Ravenswood Developers, Inc. (Ravenswood) for construction of a home. The purchase price was $805,000. Defendant Baruch Schleichorn supervised the construction of the house for Ravenswood.
The parties agreed to resolve all disputes in connection with the contract through arbitration. Plaintiffs, however, insisted that they retain the right to pursue a specific performance remedy in Superior Court. The relevant clause provides as follows:
Any dispute arising in connection with this Agreement and/or any amendments to this Agreement, either before or after closing of title, shall be heard and determined by arbitration at the offices of the American Arbitration Association subject to the Buyer's right to appeal for specific performance of the Contract in the event of the Seller's negligent and/or arbitrary and/or willful refusal to close title. The decision of the arbitrator shall be final and binding. The cost of arbitration shall be shared equally between the parties.

[emphasis supplied.]
According to plaintiffs, Schleichorn constantly commented between November 1996 and April 1997 that he could get $300,000 more for their house. In March 1997, plaintiffs were informed by a third party that Schleichorn was trying to find a way to get out of the contract. On April 13, 1997, Schleichorn told the Carusos he would cancel the contract unless they paid an additional $100,000. When they refused, he informed them the contract was canceled.
On April 21, 1997, after Ravenswood refused to reaffirm the contract, plaintiffs filed a complaint in the Superior Court for specific performance of the contract. In response to Schleichorn's threat to construct a room in non-conformance with the plans, plaintiffs filed an amended complaint seeking not only specific performance but also damages for breach of contract and consumer fraud. Plaintiffs also applied for an order to enjoin further construction in non-conformance with the plans. This application was denied and the Superior Court action was stayed pending arbitration of plaintiffs' damage claims.
Plaintiffs submitted a formal arbitration demand on June 3, 1997, and the first hearing was conducted on December 19, 1997. At this hearing, plaintiffs' attorney stated that the consumer fraud claim was not subject to arbitration and he asserts that defendants' attorney agreed. Plaintiffs assert they anticipated returning to the Superior Court to prosecute their consumer fraud claims at the conclusion of the arbitration proceedings. Nevertheless, on May 1, 1998, plaintiffs filed a second complaint which alleged that the same conduct recited in the action filed in April 1997 constituted violations of the Consumer Fraud Act, N.J.S.A. 56:8-1 to -20, and the Racketeer Influenced and Corrupt Organizations Act (RICO), N.J.S.A. 2C:41-1 to -6.2.
On June 29 and September 17, 1998, two additional arbitration hearings were conducted. At the September 17 hearing, *982 defendants stated that they intended to file a motion to dismiss the newly filed complaint on the basis that the claims were subject to arbitration. The motion to dismiss was filed on September 24, 1998. On October 23, 1998, Judge Ashrafi referred the consumer fraud and RICO claims to arbitration.
In his oral opinion, Judge Ashrafi found that the language of the arbitration clause was broad and encompassed all disputes and all remedies, contractual and statutory, flowing from those disputes. He noted that the narrow construction of the clause advocated by plaintiffs was contrary to the general rule requiring liberal interpretation of such clauses. Furthermore, the explicit exception in the contract for specific performance implied plaintiffs' understanding of the sweeping scope of the clause.
On August 13, 1999, the arbitrator found defendants breached the contract and entered a monetary award in favor of plaintiffs. The consumer fraud and RICO claims were denied. On December 3, 1999, Judge Ashrafi entered an order confirming the arbitration award. Plaintiffs' appeal focuses on the October 23, 1998 order referring the consumer fraud and RICO claims to arbitration.
On appeal, plaintiffs argue their consumer fraud and RICO claims should have been resolved in the Superior Court because they never agreed to arbitrate these claims. They also contend that defendants waived any right to arbitrate these claims because of their tardy assertion of the arbitrability of these claims. Finally, plaintiffs assert that the remedial purposes of consumer fraud and RICO claims are incompatible with arbitration. Defendants argue that the use of the language "any dispute" was sufficient to encompass the consumer fraud and RICO claims. They further contend that the assertion of their right to arbitrate these claims was timely and the remedial purposes of both statutory remedies are not subverted by arbitration.
It is well-established that this State has a strong public policy "favoring arbitration as a means of dispute resolution and requiring a liberal construction of contracts in favor of arbitration." Alamo Rent A Car, Inc. v. Galarza, 306 N.J.Super. 384, 389, 703 A.2d 961 (App.Div.1997) (citing Marchak v. Claridge Commons, Inc., 134 N.J. 275, 281, 633 A.2d 531 (1993)). However, the scope of arbitration is governed by the agreement of the parties. Young v. Prudential Ins. Co. of Am., Inc., 297 N.J.Super. 605, 617, 688 A.2d 1069 (App.Div.), certif. denied, 149 N.J. 408, 694 A.2d 193 (1997); Singer v. Commodities Corp., 292 N.J.Super. 391, 402, 678 A.2d 1165 (App.Div. 1996) ("`the scope of arbitration [is] dependent solely, upon the parties' agreement'") (quoting Cohen v. Allstate Ins. Co., 231 N.J.Super. 97, 101, 555 A.2d 21 (App.Div.), certif. denied, 117 N.J. 87, 563 A.2d 846 (1989)). Courts are not permitted to rewrite a contract to broaden the scope of arbitration. Yale Materials Handling Corp. v. White Storage & Retrieval Sys., Inc., 240 N.J.Super. 370, 374, 573 A.2d 484 (App.Div.1990). Courts should review whether the arbitration clause explicitly states its purpose "to assure that the parties know that in electing arbitration as the exclusive remedy, they are waiving their time-honored right to sue." Marchak, supra, 134 N.J. at 282, 633 A.2d 531. Thus, "`only those issues may be arbitrated which the parties have agreed [to arbitrate].'" Singer, supra, 292 N.J.Super. at 403, 678 A.2d 1165 (quoting Grover v. Universal Underwriters Ins. Co., 80 N.J. 221, 229, 403 A.2d 448 (1979)).
It is clear that "a statutory remedy does not, in itself, affect the favored status accorded to arbitration." Alamo Rent A Car, supra, 306 N.J.Super. at 389, 703 A.2d 961; see Red Bank Reg'l Educ. Ass'n v. Red Bank Reg'l High Sch. Bd. of Educ., 78 N.J. 122, 140, 393 A.2d 267 (1978) (the "propriety of contractual waiver of statutory rights is well-established"). *983 In fact, "[o]nly if a statute or its legislative history evidences an intention to preclude alternate forms of dispute resolution, will arbitration be an unenforceable option." Alamo Rent A Car, supra, 306 N.J.Super. at 389, 703 A.2d 961. Accord Garfinkel v. Morristown Obstetrics & Gynecology Assocs., 333 N.J.Super. 291, 300, 755 A.2d 626 (App.Div.2000). See also Singer, supra, 292 N.J.Super. at 405, 678 A.2d 1165 ("`An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'") (quoting United Steelworkers of Am. v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582-83, 80 S.Ct. 1347, 1352-53, 4 L.Ed.2d 1409, 1417 (1960)).
Our review of the text and history of the Consumer Fraud Act and RICO provides no support for the position promoted by plaintiffs that neither statutory claim is amenable to arbitration. Indeed, this court has held that claims arising under the Consumer Fraud Act may be heard and resolved through arbitration. Cybul v. Atrium Palace Syndicate, 272 N.J.Super. 330, 335, 639 A.2d 1146 (App.Div.), certif. denied, 137 N.J. 311, 645 A.2d 140 (1994). Another court has held that claims arising under this state's RICO statute may be submitted to arbitration. Republic of the Philippines v. Westinghouse Elec. Corp., 714 F.Supp. 1362, 1373 (D.N.J. 1989).
Basic contract principles apply when a court interprets an arbitration clause, Singer, supra, 292 N.J.Super. at 402, 678 A.2d 1165, because "a submission to arbitration is essentially a contract, and the parties are bound to the extent of that contract." Local 462, Int'l Brotherhood of Teamsters v. Charles Schaefer & Sons, Inc., 223 N.J.Super. 520, 525, 539 A.2d 295 (App.Div.1988); see Quigley v. KPMG Peat Marwick, LLP, 330 N.J.Super. 252, 270, 749 A.2d 405 (App.Div.), certif. denied, 165 N.J. 527, 760 A.2d 781 (2000). Courts are generally obligated to enforce contracts based on the intent of the parties, the express terms of the contract, surrounding circumstances and the underlying purpose of the contract. Marchak, supra, 134 N.J. at 282, 633 A.2d 531; Jacobs v. Great Pac. Century Corp., 104 N.J. 580, 586, 518 A.2d 223 (1986); Vasquez v. Glassboro Serv. Ass'n, Inc., 83 N.J. 86, 101, 415 A.2d 1156 (1980). If there is an ambiguity in the language of the arbitration clause, it should be construed against the party that drafted it. Quigley, supra, 330 N.J.Super. at 271, 749 A.2d 405.
The Carusos primarily rely on Alamo Rent A Car in support of their argument. They contend that this court concluded in Alamo Rent A Car that there is a "distinction between claims controlled by the terms of the contract and claims arising out of statutes."
In Alamo Rent A Car, this court held that an employee may agree to arbitrate statutory claims under the Law Against Discrimination (LAD). Alamo Rent A Car, supra, 306 N.J.Super. at 389, 703 A.2d 961. On the other hand, we also held that the agreement did not preclude resort to the court to pursue statutory remedies. Id. at 392, 703 A.2d 961. We noted that the agreement between Alamo and its employee established a series of terms and conditions of employment, two of which were the rights to be free from discrimination and harassment. The agreement also established that any dispute concerning terms and conditions of employment was to be submitted to arbitration. We noted the substantial distinction between a breach of a term and condition of employment and the full panoply of statutory rights and remedies concerning unlawful discrimination in the workplace expressed in the LAD. Id. at 393, 703 A.2d 961. We held that the specific language of the employment agreement referring to arbitration disputes only concerning the terms and conditions of employment was insufficient to constitute a knowing and voluntary waiver of the employee's statutory rights and remedies for discriminatory *984 conduct in the workplace. Id. at 392, 703 A.2d 961.
Similarly, in Quigley, this court found the language of the arbitration clause narrow and inapplicable to waive the plaintiff's statutory claim under the LAD. Quigley, supra, 330 N.J.Super. at 270-74, 749 A.2d 405. The arbitration clause in Quigley stated that "[a]ny claim or controversy between the parties arising out of or relating to this Agreement or the breach thereof, or in any way related to the terms and conditions of the employment ... shall be settled by arbitration." Id. at 257, 749 A.2d 405. This court noted that "there is no mention in the clause of arbitrating disputes arising from `plaintiff's termination'... [n]or is there any reference in the arbitration clause to statutory claims arising out of and redressable by the LAD or other discrimination laws." Id. at 272, 749 A.2d 405. Thus, this court concluded that the arbitration clause in Quigley was no more inclusive than the one in Alamo Rent A Car which was inadequate to constitute a waiver of statutory remedies under the LAD. Ibid.
By contrast, in Garfinkel, this court required a physician's defamation and tortious interference with contract claims to be submitted to arbitration along with his breach of contract and LAD claims. In Garfinkel, the arbitration clause provided:
[e]xcept as otherwise expressly set forth in paragraphs 14 and 15 hereof [which no party deems to be relevant], any controversy arising out of, or relating to, this Agreement or breach thereof, shall be settled by arbitration in Morristown, New Jersey, in accordance with the rules then obtaining of the American Arbitration Association, and judgment upon any award rendered by the arbitrator or arbitrators may be entered in any court having jurisdiction thereof.
[Garfinkel, supra, 333 N.J.Super. at 295, 755 A.2d 626.]
This court instructed that "the focus remains on the facts underlying the claim rather than the actual legal terms in which the claim is couched." Id. at 304, 755 A.2d 626. Stated differently, "`[w]hether a particular claim is arbitrable depends not upon the characterization of the claim, but upon the relationship of the claim to the subject matter of the arbitration clause.'" Bleumer v. Parkway Ins. Co., 277 N.J.Super. 378, 405, 649 A.2d 913 (Law Div.1994) (quoting In re Oil Spill by the "Amoco Cadiz", 659 F.2d 789, 794 (7th Cir.1981)). To hold otherwise would permit a party to frame its complaint in language which frustrates or avoids the scope of the arbitration clause. Ibid.
Here, the consumer fraud and RICO claims are founded on facts no different than the breach of contract claims submitted to the arbitrator. An examination of the facts recited in the original complaint, which was eventually submitted to the arbitrator in 1997, reveals that plaintiffs rely on the same facts to support the breach of contract, consumer fraud and RICO claims. Although plaintiffs couch the claims in the relevant statutory language, it is apparent that the claims are subsumed in the subject matter of the arbitration agreement between the parties. Furthermore, plaintiffs did exercise their right to limit the scope of the arbitration agreement when they insisted upon the language that the arbitration would not preclude pursuit of specific performance in Superior Court. This is highly suggestive that the parties understood that all disputes concerning the performance of the contract by both parties would be resolved through arbitration.
We are also satisfied that defendants did not waive their right to arbitration of the consumer fraud and RICO claims. The record simply does not suggest that defendants voluntarily and knowingly waived their right to arbitrate the statutory claims. Plaintiffs did not formally assert their statutory claims until May 1998, several months after the first arbitration *985 hearing and defendants were not served with the complaint until August 1998. At an arbitration hearing on September 17, 1998, at or about the time defendants' answer was due, defendants raised their objection to litigating the statutory claims and defendants moved to dismiss the complaint one week later. Defendants asserted their right to arbitrate these claims in a timely fashion. Judge Ashrafi's order referring the consumer fraud and RICO claims to arbitration is affirmed.
Affirmed.