755 A.2d 626 (2000)
333 N.J. Super. 291
David A. GARFINKEL, M.D., Plaintiff-Appellant,
v.
MORRISTOWN OBSTETRICS & GYNECOLOGY ASSOCIATES, P.A., Lifeline Medical Associates, LLC, ABC Corp., David E. Jacobwitz, M.D. and Joseph Ramieri, M.D., Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued February 2, 2000.
Decided July 25, 2000.
*628 Andrew Dwyer argued the cause for appellant (Dwyer & Ellis, attorneys; Mr. Dwyer, of counsel and on the brief).
Glenn A. Montgomery, Bedminster, argued the cause for respondents Morristown Obstetrics & Gynecology Associates and Joseph Ramieri, M.D. (Pollock, Montgomery & Chapin, attorneys; Mr. Montgomery, on the brief).
Brian W. Kincaid, Parsippany, argued the cause for respondent David E. Jacobwitz, M.D. (Fein, Such, Kahn & Shepard, attorneys; James E. Shepard, on the brief).
Purcell, Ries, Shannon, Mulcahy & O'Neill, Parsippany, attorneys for respondent Lifeline Medical Associates, LLC (Thomas M. Mulcahy, on the brief).
Before Judges STERN, WEFING and STEINBERG.
*627 The opinion of the court was delivered by STERN, P.J.A.D.
Plaintiff David A. Garfinkel, M.D. appeals from an order, entered January 4, 1999, granting defendants' "Motion to Dismiss [the complaint] and Compel Arbitration." While acknowledging that his employment with defendant Morristown Obstetrics and Gynecology Associates ("MOGA") could be terminated with or without cause, plaintiff seeks damages for (1) breach of contract based "on the procedure by which he was terminated" (counts one and two), (2) discrimination in violation of the New Jersey Law Against Discrimination ("L.A.D."), N.J.S.A. 10:5-1 to -42, asserting he was terminated "solely because plaintiff is a man" (count three), and (3) "post-termination tort claims," which include claims of tortious interference with economic advantage (count four) and defamation (count five). On his appeal, plaintiff contends that the arbitration clause in his agreement with MOGA did not and could not waive his right to a jury trial; that the clause does not apply to the post-termination tort claims or to the claims against the individual defendants who were not party to the agreement, and that defendants have "waived any entitlement to arbitration."
The arbitration clause in paragraph 18 of plaintiff's agreement with MOGA provides:
[e]xcept as otherwise expressly set forth in paragraphs 14 and 15 hereof [which no party deems to be relevant], any controversy arising out of, or relating to, this Agreement or the breach thereof, shall be settled by arbitration in Morristown, New Jersey, in accordance with the rules then obtaining of the American Arbitration Association, and judgement upon any award rendered by the arbitrator or arbitrators may be entered in any court having jurisdiction thereof.

[ (emphasis added).][1]
Plaintiff argues both that "because there was no voluntary and knowing agreement to submit future discrimination claims to arbitration" and "because the arbitration provision ... was involuntarily imposed on plaintiff as a condition of his employment," the arbitration clause is neither applicable nor enforceable.

I.
We initially reject the claim that the demand for arbitration was waived. We agree with Judge Catherine Langlois' analysis in this regard:

*629 First, the court holds that the request to dismiss the matter and refer to arbitration has not been waived by the fact that the defendant has answered the complaint and asserted counterclaims. The fact is that an affirmative defense had been asserted that the issues are to be arbitrated; that no discovery has actually commenced; and that this motion is brought within 30 days of the answer itself. See generally, Comments to Rule 4:5-4.
Defendants MOGA and Ramieri asserted as an affirmative defense that "plaintiff's complaint is barred by the Arbitration Clause in the agreement entered into between the plaintiff and the defendants." See R. 4:5-4. While defendant Jacobwitz failed to include this affirmative defense in his answer dated November 5, 1998, it is undisputed that on November 25, 1998, less than ninety days after the complaint was filed, defendants MOGA and Ramieri moved to compel arbitration in accordance with the parties' agreement, and Jacobwitz joined the motion. See R. 4:6-2, -3. In any event, "[t]he mere filing of a complaint or an answer to the complaint is not a waiver of arbitration.... The court has the power, anytime before judgment, to refer the dispute to arbitration." Wasserstein v. Kovatch, 261 N.J.Super. 277, 290, 618 A.2d 886 (App. Div.) (citations omitted), certif. denied, 133 N.J. 440, 627 A.2d 1145 (1993).

II.
In granting defendants' motion to dismiss the complaint, Judge Langlois wrote:
[t]here is specific precedent, under the cases cited, that an employee may knowingly and voluntarily waive statutory remedies under LAD in favor of arbitration and be bound by that agreement. These decisions look to basic contract principles and to the Supreme Court decision in Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 11 [111] S.Ct. 1647, 114 L.Ed.2d 26 (1991), that even claims based upon discrimination may be arbitrated. See also, Seus v. John Nuveen & Co., Inc., 146 F.3d 175 (3d Cir. 1998) (Title VII claims are subject to compulsory arbitration); Bleumer v. Parkway Insurance Co., 277 N.J.Super. 378, 401, 649 A.2d 913 (Law Div.1994).
The focus of the courts, therefore, is not on the right to provide for arbitration, but rather on whether there is an agreement to arbitrate. As Young, Singer, and Galarza instruct, if both parties knowing[ly] agree to arbitrate a particular dispute, and there are circumstances that assure mutual agreementin contrast to a take-it-or-leave-it, unequal bargaining situationthe court ought to compel arbitration and carry out their wishes. Caldwell v. KFC Corp., 958 F.Supp. 962, 975 (D.N.J.1997)[.]
In that regard, the employment agreement here was negotiated, with counsel for plaintiff, between highly educated, medical professionals of equal bargaining position. Plaintiff acknowledges that he was able to negotiate with regard to the other provisions of the agreement but that defendant took the position that the arbitration clause was standard and mandatory. So, he agreed to it. That fact is not sufficient to bring into question the validity of the provision or agreement as a whole.
We agree, and affirm the judgment.

A.
On August 9, 1996, plaintiff and MOGA entered into an employment contract for his services as a physician. Defendants Jacobwitz and Ramieri are shareholders of MOGA. Jacobwitz is its president and Ramieri is the secretary. Defendant Lifeline Medical Associates is identified as "a successor in interest" to MOGA.
Plaintiff began employment as a physician with MOGA on August 12, 1996. On January 20, 1998, defendants told plaintiff that he would not be made a partner in the practice, because, as plaintiff alleges, defendant Ramieri stated plaintiff was "born *630 the wrong sex." Shortly thereafter, on March 6, 1998, defendant was terminated by defendants. Plaintiff alleges that "[o]n March 9, 1998, Dr. Ramieri told plaintiff that plaintiff did not attract patients well because he was male, and this was the reason he was being terminated." Plaintiff alleges that defendants lied to plaintiff's patients about his whereabouts after he was terminated.
Plaintiff contends that the trial judge erred in determining that "the arbitration provision is in broad language and covers any controversy or claim arising out of and relating to this employment agreement." He asserts both that his LAD claims must be tried before a jury as a matter of State public policy, and that his post-termination claims are not subject to the arbitration provision of the agreement.
Our courts have consistently enforced arbitration provisions in employment contracts despite discrimination claims. "The fact that what is at issue is a statutory remedy does not, in itself, affect the favored status accorded to arbitration." Alamo Rent A Car, Inc. v. Galarza, 306 N.J.Super. 384, 389, 703 A.2d 961 (App.Div.1997); see also Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 23, 111 S.Ct. 1647, 1650, 114 L.Ed.2d 26, 35 (1991) (holding that the plaintiff's claim under the Age Discrimination in Employment Act (ADEA), 29 U.S.C.A. §§ 621 to -634, may be subjected to mandatory arbitration); Great Western Mortgage Corp. v. Peacock, 110 F.3d 222, 230-31 (3d Cir.) (rejecting the argument, advanced by the plaintiff, that an agreement to arbitrate a discrimination claim is "void as a matter of public policy" pursuant to the LAD, and stating that "[a]ny argument that the provision of the Arbitration Agreement involving a waiver of substantive rights afforded by the state statute may be presented in the arbitral forum"), cert. denied, 522 U.S. 915, 118 S.Ct. 299, 139 L.Ed.2d 230 (1997); Quigley v. KPMG Peat Marwick LLP, 330 N.J.Super. 252, 264, 749 A.2d 405 (App. Div.2000). In fact, the Third Circuit has determined that there is no "New Jersey policy against arbitration of claims such as [the plaintiff's]." Peacock, supra, 110 F.3d at 231.
"New Jersey courts have also enforced employees' agreements to arbitrate statutory employment claims." Quigley, supra, 330 N.J.Super. at 260, 749 A.2d 405. The plaintiff in Quigley filed a complaint alleging age discrimination under LAD after he was terminated from his position as a senior manager with the defendant for eighteen years. Id. at 256, 749 A.2d 405. The defendant argued that under the employment agreement, which was signed by the plaintiff on two separate occasions, all claims brought against the defendant must be resolved through arbitration. Id. at 257, 749 A.2d 405. Although we ultimately determined that the plaintiff "did not knowingly and voluntarily waive his right to a trial by jury on his LAD claim, since no such statutory right existed at the time," id. at 256, 749 A.2d 405, and given the specific language of the agreement, id. at 272-73, 749 A.2d 405, we also stressed that "New Jersey's public policy against discrimination does not conflict with the policy in favor of arbitration," id. at 262, 749 A.2d 405.
In Alamo Rent A Car, Inc. v. Galarza, we also concluded that "an employee may, by contract, give up his or her right to pursue a statutory LAD remedy in favor of arbitration." 306 N.J.Super. at 389, 703 A.2d 961 (citing Gilmer, supra, and Young v. Prudential Ins. Co., 297 N.J.Super. 605, 688 A.2d 1069 (App.Div.), certif. denied, 149 N.J. 408, 694 A.2d 193 (1997)). As Judge (now Justice) Long explained:
The fact that what is at issue is a statutory remedy does not, in itself, affect the favored status accorded to arbitration. Indeed, the "propriety of contractual waiver of statutory rights is well-established."... There is no indication in the text or legislative history of the LAD that members of the classes protected by that statute cannot waive the statutory *631 process and agree to arbitrate the dispute.
[Galarza, supra, 306 N.J.Super. at 389, 703 A.2d 961 (citation omitted).]
Similarly, in Young, supra, 297 N.J.Super. at 609, 688 A.2d 1069, as a condition of employment, the plaintiff was required to register with the National Association of Securities Dealers ("NASD"). The standard employment application signed by the plaintiff, id. at 609, 688 A.2d 1069, required that any claim asserted against his firm would be arbitrated, as is required under the NASD rules, id. at 613, 688 A.2d 1069. Relying upon Gilmer, supra, we held that the plaintiff's claims under the LAD and the Conscientious Employees Protection Act ("CEPA"), N.J.S.A. 34:19-1 to -8, "may be the subject of an arbitration agreement," thereby requiring an employee to waive the right to a jury trial under the LAD and the CEPA (although the CEPA claim was not waived under the agreement). Young, supra, 297 N.J.Super. at 615-16, 688 A.2d 1069.
In Singer v. Commodities Corp., 292 N.J.Super. 391, 399, 678 A.2d 1165 (App.Div.1996), we also enforced an arbitration agreement included in the standard NASD form against an employee who asserted a defamation and CEPA claim. We cited the "well-accepted principle that New Jersey supports the settlement of disputes by arbitration," id. at 400, 678 A.2d 1165, and concluded that "compelling arbitration under [the NASD Code of employment-related disputes "arising out of the employment or termination of employment"] is neither unfair nor inequitable and does not deprive plaintiff of any fundamental or substantive rights," id. at 407, 678 A.2d 1165. Thus, the public policy against discrimination does not conflict with the public policy in favor of arbitration, and is not violated by enforcing employees' agreements to arbitrate discrimination claims.[2]
We thus reaffirm that New Jersey public policy does not preclude enforcement of the agreement to arbitrate a statutory claim in the absence of legislation to the contrary. Quigley, supra, 330 N.J.Super. at 262, 749 A.2d 405; Galarza, supra, 306 N.J.Super. at 389, 703 A.2d 961; Young, supra, 297 N.J.Super. at 616, 688 A.2d 1069; Singer, 292 N.J.Super. at 407, 678 A.2d 1165; Bleumer, supra, 277 N.J.Super. at 401, 649 A.2d 913.
However, Galarza, supra, 306 N.J.Super. at 391, 703 A.2d 961 (citation omitted), holds that "[a]n argeement to waive statutory remedies `must be clearly and unmistakably established, and contractual language alleged to constitute a waiver will not be read expansively.'" As a result, the waiver in Galarza was not adequately established. Id. at 392-95, 703 A.2d 961; see also Quigley, supra, 330 N.J.Super. at 273-74, 749 A.2d 405 (finding that the arbitration clause "did not include claims of discriminatory discharge" since "the rule favoring arbitration must give way to the well-settled principle that `[a] clause depriving a citizen of access to the courts should clearly state its purpose'" (citation omitted)). Plaintiff asserts that "the arbitration provision at issue in this case was involuntarily imposed on plaintiff as a condition of his employment, [and] it may not *632 be enforced against plaintiff's statutory discrimination claims under the LAD." We disagree.
In Gilmer, supra, 500 U.S. at 33, 111 S.Ct. at 1655, 114 L.Ed.2d at 41, the Supreme Court stated that "[m]ere inequality in bargaining power ... is not a sufficient reason to hold that arbitration agreements are never enforceable in the employment context." The Court found that there was "no indication ... that Gilmer, an experienced businessman, was coerced or defrauded into agreeing to the arbitration clause...." Id. at 33, 111 S.Ct. at 1656, 114 L.Ed.2d at 42; see also Seus, supra, 146 F.3d at 183-84; Peacock, supra, 110 F.3d at 229-30; cf. Kummetz v. Tech Mold, Inc., 152 F.3d 1153, 1155-56 (9th Cir.1998).
In Young, supra, 297 N.J.Super. at 617-19, 688 A.2d 1069, we decided that the plaintiff's agreement to arbitrate was valid with regard to the LAD claim, even though a form contract was involved. Id. at 620-21, 688 A.2d 1069. The plaintiff asserted that he was not aware that the standard employment form contained the arbitration clause because he did not have "sufficient time to read it carefully" before signing it. Id. at 617-18, 688 A.2d 1069. Thus, the plaintiff argued that he never agreed to arbitration and, moreover, was never provided with a copy of either the employment form or the NASD rules to which it referred. Ibid. We held that, in accordance with the undisputed evidence, "no reasonable factfinder could conclude that [the plaintiff] did not knowingly sign the registration application and its arbitration agreement," id. at 618, 688 A.2d 1069, and that "[f]ailing to read a contract does not excuse performance unless fraud or misconduct by the other party prevented one from reading [it]," id. at 619, 688 A.2d 1069 (citation omitted).
In this case, we conclude that the waiver was knowing and voluntary. As noted above, Judge Langlois found:
the employment agreement here was negotiated, with counsel for plaintiff, between highly educated, medical professionals of equal bargaining position. Plaintiff acknowledges that he was able to negotiate with regard to the other provisions of the agreement but that defendant took the position that the arbitration clause was standard and mandatory. So, he agreed to it. That fact is not sufficient to bring into question the validity of the provision or agreement as a whole. There was representation of counsel, there was equality in bargaining position, the provision is conspicuous (by plaintiff's own admission discussed and considered), and is thus enforceable. His "understanding" of what it meant is not determina[tive]; the language is specific and express and clear. He is required to arbitrate "controversy or claim."

[ (citation omitted).]
This case is distinguishable from Galarza. There is no contest before us to the fact that plaintiff is a medical professional who negotiated the complex agreement and a supplement thereto with the assistance of counsel. This case does not involve a form contract which plaintiff had to sign as a condition of employment. In these circumstances, he cannot claim that he failed to waive statutory remedies which his agreement could have preserved.
We add that plaintiff does not, and cannot, claim that he was terminated by the individual defendants. His contract was with MOGA and not with them. Irrespective of the arbitrability of the LAD and alleged post-termination claims against MOGA and the individual defendants, the contract claims are subject to arbitration, and were properly dismissed by Judge Langlois.

III.
Plaintiff claims that his allegations of tortious interference and defamation are not subject to resolution through arbitration *633 since "[t]he arbitration clause in this case does not apply to `any dispute' between the parties, but only to issues relating to the contract." Defendants assert "[t]o argue that the `post termination tort claims' are not related to, or arise out of, the agreement is to ignore the plain and clear language of the agreement and to distort its meaning." Judge Langlois agreed with defendants, and held:
[i]n this matter, the arbitration provision is in broad language and covers any controversy or claim arising out of and relating to this employment agreement. Clearly, plaintiff's termination and his breach of contract claims arise out of and relate to the agreement. Similarly, the claim as to the reason for the terminationdiscriminatory or notarises out of and relates to his employment. And, the claims of interference of contract and defamation, although torts, do as well arise out of and relate to his employment with the practice. As his own complaint states, the actions of the defendants were based in their failure to refer clients and/or in making comments regarding his termination.
We agree with Judge Langlois in this regard as well.
"In New Jersey, the guiding principle governing the scope of an arbitration clause is `that only those issues may be arbitrated which the parties have agreed shall be.'" United Serv. Auto. Ass'n (USAA) v. Turck, 156 N.J. 480, 485, 721 A.2d 1 (1998) (citation omitted); see also Quigley, supra, 330 N.J.Super. at 270-71, 749 A.2d 405 (affirming the prevailing view that only those issues that the parties agreed to arbitrate are arbitrable). When arbitration provisions are broadly worded, courts have "construed [the provision] as encompassing tort, as well as contract claims." Bleumer, supra, 277 N.J.Super. at 405, 649 A.2d 913; see also Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 398, 87 S.Ct. 1801, 1803, 18 L.Ed.2d 1270 (1967) (stating that there is no indication that fraud in the inducement of a contract is not subject to arbitration under the contract); Altshul Stern & Co., Inc. v. Mitsui Bussan Kaisha, Ltd., 385 F.2d 158, 159 (2d Cir.1967), (holding that "[p]laintiff cannot avoid the broad language of the arbitration clause [providing that "any dispute or difference arising out of or relating to this contract or the breach thereof" shall be subject to arbitration] by casting its complaint in tort" because the tort action was not "wholly independent of the contract" (citation and footnote omitted)).
Thus, in this case, the defamation and tortious interference claims are subject to arbitration. Having elected to arbitrate "any controversy arising out of or relating to" the employment contract, or its breach, plaintiff has a substantial burden to preclude arbitrability of a discrete claim, particularly given our strong judicial policy against piecemeal litigation. Turck, supra, 156 N.J. at 489, 721 A.2d 1 (stating that "[j]ust as we view piecemeal litigation as anathema, we also look with disfavor upon the unnecessary bifurcation of disputes between judicial resolution and arbitration" (quoting Ohio Cas. Ins. Co. v. Benson, 87 N.J. 191, 199, 432 A.2d 905 (1981))).
In essence, the focus remains on the facts underlying the claim rather than the actual legal terms in which the claim is couched. "Whether a particular claim is arbitrable depends not upon the characterization of the claim, but upon the relationship of the claim to the subject matter of the arbitration clause." Bleumer, supra, 277 N.J.Super. at 405, 649 A.2d 913 (quoting In re Oil Spill by the "Amoco Cadiz", 659 F.2d 789, 794 (7th Cir.1981)). Bleumer thus held that the plaintiff's tort claim as well as the CEPA claims fell within the scope of the broadly written arbitration clause. Ibid.
*634 We acknowledge that in Coudert v. Paine Webber Jackson & Curtis, 705 F.2d 78, 82 (2d Cir.1983), the Second Circuit, over a dissent, held that the plaintiff's defamation claim, which was based upon the employer's statements made after and regarding the termination, did not fall within the purview of the arbitration clause. The court held that the tort claim was an independent action not subject to the employment contract and its arbitration clause because those claims arose after the expiration of the employment agreement. Id. at 81-82. However, six years later, speaking through the same author, the same court decided Fleck v. E.F. Hutton Group, Inc., 891 F.2d 1047 (2d Cir.1989). There the court stated that while still believing "the timing of the torts is relevant to determining whether the tort arose out of employment or its termination," the opinion in Coudert "missed the mark" "insofar as it implied that no torts committed after employment ends are arbitrable...." Id. at 1052. The Second Circuit now adopts the position of other circuits in concluding that post-termination torts will be subject to arbitration where the claims "involve significant aspects of the employment relationship."[3]Id. at 1053. The court in Fleck remanded "with instructions to order arbitration of the claims that `involve significant aspects of the employment relationship, ... i.e., those claims for which resolution "depends upon evaluation of a party's performance" as an employee "during the time of the contractual relationship."'" Id. at 1053 (quoting Aspero v. Shearson American Express, Inc., 768 F.2d 106, 109 (6th Cir. 1985)). The court found that arbitration was required, see id. at 1054, because a reasonable employee would "expect arbitration of claims such as [the ones alleged to have been] made during foreseeable post-employment communications," id. at 1053.
Accordingly, "[t]he prevailing test applied by the courts ... is whether the tort claims involve significant aspects of the employment relationship or whether resolution of the tort claims will require an evaluation of either the employee's or the employer's performance in the course of the employment relationship." Stone v. Pennsylvania Merchant Group, Ltd., 949 F.Supp. 316, 324 (E.D.Pa.1996). Thus, to determine whether plaintiff's defamation and tortious interference claims are arbitrable as "arising out of, or relating to" his employment with MOGA, the court must determine whether plaintiff's claims involve significant aspects of his employment relationship with MOGA.
Both plaintiff's claims of defamation and tortious interference relate to the facts surrounding plaintiff's performance and termination. Plaintiff's tort claims surround his allegation that defendants, upon terminating plaintiff, "lied" to his patients about his whereabouts and reasons for termination, presumably resulting in injury to his reputation and prospective business. By plaintiff's own admission in his complaint, the alleged defamatory comments related to "plaintiff's professional and business reputation." This admission, in addition to the broad scope of the language in the arbitration clause and our strong policy against bifurcation, can only lead to the conclusion that this type of defamation claim "arise[s] out of or relate[s] to" plaintiff's employment at MOGA, and that in any event, plaintiff has not satisfied his burden of persuasion to the contrary.
The same is true with regard to plaintiff's claim alleging that "[d]efendants tortiously interfered with [his] prospective economic advantage." Plaintiff acknowledges that the claim relates to the termination of his contract at MOGA and advice given to MOGA patients about plaintiff's whereabouts and practice incident to that *635 termination. We, therefore, find that plaintiff's tort claims are sufficiently related to plaintiff's termination from MOGA such that the claims are subject to the arbitration clause in the employment agreement.

IV.
Plaintiff asserts that "to the extent Ramieri and Jacobwitz are sued in their individual capacities, the Order compelling arbitration of the claims against them should be reversed." Defendants respond by stating, "[i]t is ... evident that the corporate respondent itself can only act (or be deemed liable) through its officers or agents (the individual respondents), and that if arbitration is confined only to the corporation itself, it would logically mean that the appellant could avoid the import and intent of the agreement by floating the argument ... that the claims against the individuals should be processed in a different forum."
As a general proposition, "[a] director or officer of a corporation does not incur personal liability for its torts merely by reason of his official character, but, a director or officer who commits a tort, or who directs the tortious act to be done, or participates or cooperates therein, is liable to third persons injured thereby, even though liability may also attach to the corporation for the tort." Charles Bloom & Co. v. Echo Jewelers, 279 N.J.Super. 372, 381-82, 652 A.2d 1238 (App.Div.1995). Stated differently, "[c]orporate officers are liable to persons injured by their own torts, even though they were acting on behalf of the corporation and their intent was to benefit the corporation." Id. at 382, 652 A.2d 1238. With regard to individual liability of corporate officers under LAD, the Third Circuit has "predict[ed] that the New Jersey Supreme Court would find that an employee aids and abets a violation of the LAD when he knowingly gives substantial assistance or encouragement to the unlawful conduct of his employer." Failla v. City of Passaic, 146 F.3d 149, 158 (3d Cir.1998) (holding that individual supervisors may be liable for "civil aiding and abetting under the LAD," following the Restatement of Torts); see also Hurley v. Atlantic City Police Dept., 174 F.3d 95, 126-28 (3d Cir.1999) (noting that the assistance must be "substantial"); Baliko v. Stecker, 275 N.J.Super. 182, 190-91, 645 A.2d 1218 (App.Div.1994) (holding that "individual members may be liable as aiders and abettors [of a union] for violating [LAD]").
In light of these cases, we will assume that plaintiff has stated a claim against the individual defendants. But that does not mean that plaintiff can force the individual defendants to litigate in the Law Division when plaintiff must arbitrate with MOGA. This is so in the absence of any evidence indicating that defendants were acting in their individual capacities for their own benefit.
We can find no New Jersey case that addresses the ability of a non-party to an arbitration agreement to compel arbitration of claims asserted by a party to the agreement.[4] In Mutual Benefit Life Ins. Co. v. Zimmerman, 783 F.Supp. 853 (D.N.J.), aff'd, 970 F.2d 899 (3d Cir.1992), Judge Lechner addressed the issue in the context of an action arising out of reinsurance agreements. In that case, the movants, who were nonsignatories to the agreement, sought to compel the reinsurers to arbitration, while the reinsurers argued that the movants did not have standing to compel arbitration since they were not parties to the agreement. Id. at 864-65.
*636 The court began its analysis by noting that "`[t]he right to compel arbitration derives from a contractual right....'" Id. at 865 (quoting Britton v. Co-Op Banking Group, 916 F.2d 1405, 1413 (9th Cir.1990)). Thus, a non-party to an agreement, absent certain special circumstances, lacks standing to compel arbitration of claims. Ibid. (citations omitted). However, the court continued that
"[n]onsignatories of a contract, however, may compel arbitration or be subject to arbitration if the nonparty is an agent of a party or a third party beneficiary to the contract." See, e.g., Arnold v. Arnold Corp.-Printed Communications for Business, 920 F.2d 1269, 1281 (6th Cir. 1990) (corporate officers sued in individual capacity can invoke arbitration clause for conduct that occurred in official capacity); Barrowclough v. Kidder, Peabody & Co., 752 F.2d 923, 938 (3d Cir.1985) (arbitration agreement between employee and employer can be enforced against subentities and representatives of employer); Scher v. Bear Stearns & Co., 723 F.Supp. 211, 216 (S.D.N.Y.1989) ("Acts by employees of one of the parties to a customer agreement are equally arbitrable as acts of the principals as long as the challenged acts fall within the scope of the customer agreement."); Farmers & Merchants Bank v. Hamilton Hotel Partners, Ltd., 702 F.Supp. 1417, 1425 (W.D.Ark.1988) (where agency relationship was established plaintiff cannot disavow it for purposes of arbitration); Cauble v. Mabon, Nugent & Co., 594 F.Supp. 985, 991-92 (S.D.N.Y.1984) (introducing broker deemed to be third party beneficiary to written agreement between investor and clearing broker); Okcuoglu v. Hess, Grant & Co., 580 F.Supp. 749, 751 (E.D.Pa.1984) (introducing broker is deemed to be agent of clearing broker and can enforce arbitration clause between investor and clearing broker).

[783 F.Supp. at 865-66.]
While the Mutual Benefit Life court found that the "[m]ovants have failed to establish they are either agents or third-party beneficiaries under the Management Agreement [and][a]ccordingly, they lack[ed] standing to compel arbitration," id. at 867, "the terms of the agreement and the allegations of the complaint" were deemed controlling, id. at 866. See also Stone, supra, 949 F.Supp. at 322 (collecting the relevant cases and holding that defendant former employer had standing to compel arbitration "as an intended third party beneficiary").
Although the agreement in this case does not specifically address these two defendants as individuals, they are both signatories of plaintiff's contract with MOGA as its president and secretary. Clearly their designations as officers of the corporation imply the existence of an agency relationship between the corporation and the individual defendants. In these circumstances, consistent with our policy against bifurcation of claims, see Turck, supra, 156 N.J. at 489, 721 A.2d 1, we conclude that the individual defendants can join the principal in compelling arbitration of any claims plaintiff has against them as a result of his termination by MOGA and the events related thereto.

V.
The judgment is affirmed in all respects.
NOTES
[1] Perhaps because plaintiff, according to defendants, received his three-month severance package, he does not point to the exception in paragraph 13 relating to severance as a basis for an action at law.
[2] Duffield v. Robertson Stephens & Co., 144 F.3d 1182, (9th Cir.), cert. denied, 525 U.S. 982, 119 S.Ct. 445, 142 L.Ed.2d 399 (1998), relied upon by plaintiff, is distinguishable because it deals with Congressional policy with respect to Title VII claims. However, arbitration is not mentioned in the LAD, as it is in the Civil Rights Act of 1991, and thus, there is no legislative history to evidence our Legislature's attitude toward compulsory arbitration of discrimination claims. It is also noteworthy that other circuits have reached the opposite result, as was recognized by Judge Langlois. In particular, Seus v. John Nuveen & Co., Inc., 146 F.3d 175, 182-83 (3d Cir.1998), cert. denied, 525 U.S. 1139, 119 S.Ct. 1028, 143 L.Ed.2d 38 (1999), found that "no amount of commentary from individual legislators or committees" could convince the court that "this straightforward declaration of the full Congress can be interpreted to mean that the [Federal Arbitration Act] is impliedly repealed with respect to agreements to arbitrate Title VII claims which were executed by an employee as a condition of securing employment."
[3] Both Coudert and Fleck were concerned with interpreting the arbitration requirement of the New York Stock Exchange rules.
[4] In Padovano v. Borough of East Newark, 329 N.J.Super. 204, 214, 747 A.2d 303 (App.Div. 2000), we held that a collective bargaining unit lacked the authority to assign to its member the contractual right to arbitrate.