766 A.2d 794 (2001)
337 N.J. Super. 134
Jonathan K. LITTMAN, Plaintiff-Appellant,
v.
MORGAN STANLEY DEAN WITTER, Richard Less, Kathy Koc, Cindy Koc, Michael Gee and Karen Monroe, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued November 8, 2000.
Decided February 14, 2001.
*795 Robert Ricci, Jr., Saddlebrook, argued the cause for appellant (Cohn Lifland Pearlman Herrmann & Knopf, attorneys; Mr. Ricci, Jr., on the brief).
J. Michael Riordan, Florham Park, and John K. Bennett, Newark, argued the cause for respondents (Connell, Foley, attorneys for respondent Richard Less; Bressler, Amery & Ross, attorneys for all other respondents; Mr. Riordan and Mr. Bennett, of counsel; Kevin B. Walker, on the joint brief).
Before Judge STERN, A.A. RODRIGUEZ and COLLESTER.
The opinion of the court was delivered by STERN, P.J.A.D.
Plaintiff, Jonathan K. Littman, appeals from an order entered on August 6, 1999, compelling him "to arbitrate his claims against Defendants in the National Association of Security Dealers, Inc. ["NASD"] in accordance with the terms of the executed Form U-4" and dismissing his complaint, and from an order of September 14, 1999, denying his motion for reconsideration. Plaintiff's complaint alleged violations of the Conscientious Employee Protection Act ("CEPA"), N.J.S.A. 34:19-1 et seq. He asserts that "the reason for plaintiff's termination ... was the result of plaintiff's refusal to participate in the `Monopoly Game'" which is "nothing more than an unsophisticated company-wide policy of institutional tax fraud," resulting from a fabrication of expense receipts in exchange for cash.[1]
Plaintiff argues that the trial court erred in dismissing the CEPA count because he "is only required to submit to arbitration those claims for which the NASD requires arbitration," that the NASD rules do not require arbitration of statutory discrimination claims including CEPA claims, and that "even if [a] CEPA claim is not a `statutory employment discrimination claim[,]' [it] is still not subject to arbitration." Hence, the principal issue before us, in plaintiff's words, "is whether a claim under [CEPA] is a `statutory employment discrimination claim' as that phrase is defined by the [NASD]."

I.
For purposes of the defendants' "motion to compel arbitration," we must accept the following facts as asserted by plaintiff. Plaintiff was hired by defendant Morgan Stanley Dean Witter ("MSDW") as a financial advisor in 1997. He received "positive performance reviews" in 1997 and 1998, and was ranked "seventh (7th) nationally in his graduating class of one hundred forty seven." In fact, "[h]e was even recruited [by MSDW] to give a speech ... at the firm's next training class" for new broker dealers.
Plaintiff claims that in or about December 1998, he expressed concern to defendant Richard Less, MSDW's Fairfield branch manager, regarding "the legality of an employee bonus program called the `Monopoly Game.'" Specifically, plaintiff questioned the fact "that the fabrication of expense receipts in exchange for cash was *796 in violation of the federal tax code as he understood it." Less had allegedly been previously notified of the concern by Colleen McLaughlin, a sales assistant in the Fairfield office, "as early as September 1998." Plaintiff further contends that on or about December 7, 1998, he informed Less of his intention to marry McLaughlin and that Less responded by saying that plaintiff "could no longer work with McLaughlin." Plaintiff was terminated shortly thereafter, he says "in or about December of 1998," for "insubordination."[2] At that time, plaintiff was informed that he would have to "turn over" his "book of clients" to MSDW. He claims that when he refused to do so, Less contacted the Fairfield Police who escorted plaintiff out of the building.

II.
"The NASD is a self-regulatory organization of securities brokers and dealers, as defined by 15 U.S.C.A. § 78c(a)(26), subject to regulation by the Securities and Exchange Commission ("SEC"). [See 15 U.S.C.A. § 78o-3 et seq.] See generally []15 U.S.C. § 78[a] et seq." Young v. Prudential Ins. Co. of Am., Inc., 297 N.J.Super. 605, 609, 688 A.2d 1069 (App. Div.), certif. denied, 149 N.J. 408, 694 A.2d 193 (1997). The NASD Code of Arbitration Procedure has been promulgated by the NASD of which defendant MSDW is a member. Plaintiff was required to register with the NASD as a condition of employment. In so doing, he was required to sign the "Uniform Application for Securities Industry Registration or Transfer" Form ("Form U4") which reads, "THE APPLICANT MUST READ THE FOLLOWING VERY CAREFULLY." Immediately following this instruction, the Form U-4 provides the following:
I swear or affirm that I have read and understand the items and instructions on this form and that my answers (including attachments) are true and complete to the best of my knowledge. I understand that I am subject to administrative, civil or criminal penalties if I give false or misleading answers.
The Form U-4 further provides:
I agree to arbitrate any dispute, claim or controversy that may arise between me and my firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws of the organizations indicated in Item 10 as may be amended from time to time....
In Item 10 of the Form U-4, plaintiff registered with the NASD and agreed to be bound by the NASD Code.
Rule 10201(a) of the NASD Code identifies the controversies that are subject to mandatory arbitration, as follows:
Except as provided in paragraph (b), a dispute, claim, or controversy eligible for submission under the Rule 10100 Series between or among members and/or associated persons, and/or certain others, arising in connection with the business of such member(s) or in connection with the activities of such associated person(s), or arising out of the employment or termination of employment of such associated person(s) with such member, shall be arbitrated under this Code at the instance of:

(1) a member against another member;
(2) a member against a person associated with a member or a person associated with a member against a member; and
(3) a person associated with a member against a person associated with a member.

(emphasis added).[3]
On October 17, 1997, the NASD filed a proposed amendment to Rule 10201 with the SEC which created an exception to *797 mandatory arbitration of statutory employee discrimination claims.[4] The proposed amendment was published in the Federal Register for comment. 62 Fed.Reg. 66164 (December 17, 1997).
On April 15, 1998, in response to the original comments, the NASD filed an amendment to the proposed rule change with the SEC. The proposed amendment to Rule 10201(b), provided:
A claim alleging employment discrimination, including a sexual harassment claim, in violation of a statute is not required to be arbitrated. Such claim may be arbitrated only if the parties have agreed to arbitrate it, either before or after the dispute arose.[5]
The NASD, in its written interpretive statement to the SEC, under a section entitled "Type of Claims Covered," provided the scope of the amended rule:
One commenter contends that the exception to the arbitration requirement should apply to all statutory employment claims, such as those under the Family and Medical Leave Act or ERISA, and not just statutory claims of employment discrimination. Some commenters express the view that the exception should be extended to all common law claims. They believe that common law claims such as wrongful termination, intentional infliction of emotional distress, defamation, negligent supervision, invasion of privacy, and tortious interference with economic opportunity often join statutory claims of employment discrimination....
Alternatively, the commenters fear that the court proceedings could be stayed pending resolution of the other claims in arbitration, and that the award could have res judicata or collateral estoppel effect on the court proceeding, thus denying the employee a complete hearing in court. An industry commenter also expresses concern that parties may file pretextual claims in court to gain the advantage of more liberal discovery that can then be used in arbitration. This commenter also urges that investigative files of the Equal Employment Opportunity Commission and similar state agencies not be subject to discovery or use in arbitration.
The NASD drafted the proposed rule carefully to specify that the exception for claims of statutory employment discrimination claims was in fact just that: an exception to the long-standing rule that requires arbitration of disputes between members and associated persons. The interest groups that gave their views to the NASD during the consideration of this rule change focused their concerns on employment discrimination claims made under Title VII of the Civil Rights Act of 1964 and other federal anti-discrimination legislation, not on other federal laws or common law claims such as those listed above. It was generally understood that such other claims would remain subject to the arbitration requirement. Parties are, of course, free to make other agreements; some firms may agree to have all claims consolidated in court, while some employees may decide to proceed with all claims in arbitration. The NASD will observe developments in this area, and may consider amendments to the rule in the future if bifurcation proves to be a serious problem.
*798 (Internal footnotes omitted; emphasis added.)
On June 28, 1998, the SEC, pursuant to U.S.C.A. § 78s(b)-(c), approved the NASD's proposed amendment to Rule 10201, "[e]ffective on January 1, 1999." See 63 Fed.Reg. 35299 (June 29, 1998). In its statement promulgating the amended rule, the SEC provided that:
Paragraph (b) does not apply to causes of action created solely by judicial precedents or to other causes of action under state or federal law, which remain subject to mandatory arbitration under paragraph (a).
....
Such judicially created causes of action might include, for example, claims alleging "wrongful discharge" without any accompanying claim of discrimination on account of age, sex, race, or other status protected by a specific law.

[63 Fed.Reg. 35299 ("order granting approval to proposed rule change" dated June 29, 1998) (emphasis added).]
Thereafter, the NASD published a document entitled "NASD Regulation Publishes Frequently Asked Questions Relating To Arbitration of Employment Discrimination Claims," dated December 7, 1998. The relevant portion of this document is as follows:
Q: What exactly does the amendment do?
A: It creates an exception to the requirement in NASD Rule 10201 for associated persons to arbitrate all disputes arising out of their employment or termination of employment with a member. The exception says that claims alleging employment discrimination, including sexual harassment claims, in violation of a statute are not required to be arbitrated. Such claims remain eligible but may be arbitrated only if the parties have agreed to arbitrate them, either before or after the dispute arose.
....
Q: When will the rule change be effective?
A: It will be effective on January 1, 1999, for claims filed on or after that date.
....
Q: What is considered to be a "statutory claim" of employment discrimination?
A: The term includes claims of employment discrimination in violation of a "statute," which is defined broadly to include a federal, state, county, or municipal law or ordinance, as well as regulations or interpretations under such law or ordinance issued by a governmental body. This would include, for example, a claim of sexual harassment or pregnancy discrimination in violation of EEOC Guidelines issued pursuant to Title VII of the Civil Rights Act of 1964, even though such forms of discrimination are not mentioned in the statute itself.
(emphasis added).

III.
Neither party claims that the former rule applies to this termination which occurred before the effective date of the amended regulation. In fact, plaintiff pursues this litigation premised upon the amendment which was effective after his termination.[6] In the absence of any dispute by defendants with respect to this fact, we proceed on the assumption the new rules apply.
Plaintiff contends that he "is only required to submit to arbitration those claims for which the NASD requires arbitration." *799 While acknowledging the mandatory arbitration of claims specified by the NASD, he asserts that a claim under the CEPA is exempt from arbitration in accordance with the amended rule. Hence the critical issue before us is whether a CEPA claim is "a claim alleging employment discrimination" within the meaning of the amended rule 10201(b).
In asserting that he alleges an "employment discrimination claim," plaintiff relies upon the United States District Court's decision in Bowles v. City of Camden, 993 F.Supp. 255, 261 (D.N.J.1998), in which the court held that because the elements of a CEPA claim "are similar to those necessary to prove a violation of Title VII" of the Civil Rights Act of 1964, Title VII principles would be utilized as the "landscape for analyzing [ ] CEPA claims." However, the court in Bowles did not hold that CEPA was an employment discrimination statute, nor addressed whether CEPA would qualify as such under the NASD Code.
As noted above, the NASD commentary interpreting the proposed amendment to Rule 10201(b), as presented to the SEC, provided:
Some commenters express the view that the exception should be extended to ... common law claims such as wrongful termination, intentional infliction of emotional distress, defamation, negligent supervision, invasion of privacy, and tortious interference with economic opportunity....
....
... The interest groups that gave their views to the NASD during the consideration of this rule change focused their concerns on employment discrimination claims made under Title VII of the Civil Rights Act of 1964 and other federal anti-discrimination legislation, not on other federal laws or common law claims such as those listed above. It was generally understood that such other claims would remain subject to the arbitration agreement.
(internal footnotes omitted).
Although not binding, the commentary is entitled to "deference," particularly because the SEC adopted the rule change after its promulgation. First Heritage Corp. v. NASD, 785 F.Supp. 1250, 1251 (E.D.Mich.1992) (citing Shearson/American Express, Inc. v. McMahon, 482 U.S. 220, 234, 107 S.Ct. 2332, 2341, 96 L.Ed.2d 185, 199 (1987), reh'g denied, 483 U.S. 1056, 108 S.Ct. 31, 97 L.Ed.2d 819 (1987)). Here, the commentary indicates that the NASD intended to exempt from mandatory arbitration only statutory claims similar to those derived from Title VII.
CEPA was not a derivative of Title VII but rather a codification of a common law cause of action. In Pierce v. Ortho Pharmaceutical Corp., 84 N.J. 58, 72, 417 A.2d 505 (1980), the Supreme Court held that even "an employee [at will] has a cause of action for wrongful discharge when the discharge is contrary to a clear mandate of public policy." Consistent with the Pierce decision, in Potter v. Village Bank, 225 N.J.Super. 547, 560-61, 543 A.2d 80 (App.Div.), certif. denied, 113 N.J. 352, 550 A.2d 462 (1988), we determined a "whistle blower" has a cause of action based upon "retaliatory discharge from employment in violation of a clear mandate of public policy." Speaking through Judge (now Justice) Coleman, we said:
It is now apparent that Pierce does not require an at will employee's claim of retaliatory discharge to be based on a specific statute which proscribes a particular type of discharge. Rather, an employer's obligation to refrain from discharging an employee who reports suspected criminal activities to law enforcement officials reflects a duty imposed upon all employers ... in order to implement the fundamental public policies embodied in the State and federal penal statutes.
....
Additionally, after plaintiff's employment was terminated, the Legislature *800 enacted the Conscientious Employee Protection Act, N.J.S.A. 34:19-1 et seq. See L. 1986, c. 105, § 1, effective September 5, 1986. Under the act, an employee who has been terminated because of reporting suspected criminal violations, has the right to file a retaliatory tort claim in addition to other remedies. N.J.S.A. 34:19-3. We read this legislative enactment as a codification of public policy established through judicial decisions.

Id. at 558, 560, 543 A.2d 80 (emphasis added).
As Potter indicates, CEPA was not a derivative of Title VII or other federal discriminatory statutes, but rather a codification of the public policy provided in Pierce and subsequent cases which had established common law claims. Ibid.; see Barratt v. Cushman & Wakefield, 144 N.J. 120, 126, 675 A.2d 1094 (1996) (noting that CEPA is a codification of the Supreme Court's ruling in Pierce); see also Falco v. Community Med. Ctr., 296 N.J.Super. 298, 310, 686 A.2d 1212 (App.Div.1997), certif. denied, 153 N.J. 405, 709 A.2d 798 (1998). In fact, a plaintiff must elect between his common law and CEPA statutory claims. See N.J.S.A. 34:19-8 (providing that "the institution of an action in accordance with this act shall be deemed a waiver of the rights and remedies available under any other contract, collective bargaining agreement, State law, rule or regulation or under the common law");[7]see also Mehlman v. Mobil Oil Corp., 153 N.J. 163, 196-97, 707 A.2d 1000 (1998).
While we have "recognize[d] that CEPA, similar to the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 to -42, is a civil rights statute," Zappasodi v. State, 335 N.J.Super. 83, 89, 761 A.2d 96 (App.Div.2000),[8] CEPA embodies a remedy based on unlawful retaliation against any employee, as opposed to one designed to protect against a discriminated class. As the trial judge stated in granting the motion to compel arbitration:
Generally speaking, what CIPA [sic] did was to put in statutory form the common law cause of action for wrongful discharge first recognized in Pierce v. Ortho Pharmaceutical Company [Corp.]. CIPA [sic] established a statutory exception to the general rule that an employer can terminate an at will employee with or without cause. Given the history of CIPA [sic], its general purposes, and the history of the rule amendment, in the Court's view the exception in N.A.S.D.'s rules for employment discrimination claims is just that.

*801 It is an exception to claims made based on adverse treatment being given to an employee by virtue of their status, by virtue of their age, their gender, their religion or their race, not based on their activities.
New Jersey courts have enforced employees' Form U-4 agreements to arbitrate claims under the CEPA. See generally, Young v. Prudential Ins. Co. of America, 297 N.J.Super. 605, 688 A.2d 1069 (App.Div.), certif. denied, 149 N.J. 408, 694 A.2d 193 (1997); see also Singer v. Commodities Corp., 292 N.J.Super. 391, 678 A.2d 1165 (App.Div.1996); see also Bleumer v. Parkway Ins. Co., 277 N.J.Super. 378, 649 A.2d 913 (Law Div.1994). We fail to believe that the NASD or SEC intended to affect these precedents without a clearer statement of intent.
In 1994, the Law Division in Bleumer held that required mandatory arbitration was applicable to claims under the CEPA pursuant to an arbitration agreement.[9] 277 N.J.Super. at 402-06, 649 A.2d 913. Judge Schwartz found that plaintiff was bound by the arbitration agreement and that his CEPA claim was subject to arbitration in accordance with the agreement. Id. at 397-98, 649 A.2d 913.
Subsequently, in Singer, we enforced an arbitration agreement included in the standard NASD Form U-4 against an employee who asserted a defamation and CEPA claim. 292 N.J.Super. at 405-08, 678 A.2d 1165. Judge Michels cited the "well-accepted principle that New Jersey supports the settlement of disputes by arbitration," id. at 400, 678 A.2d 1165, and concluded that "compelling arbitration under these circumstances is neither unfair nor inequitable and does not deprive plaintiff of any fundamental or substantive rights." Id. at 407, 678 A.2d 1165.
Most recently in Young, we held that the Form U-4 requiring plaintiff to arbitrate any claims against his firm, in accordance with the NASD Code was enforceable. 297 N.J.Super. at 617-21, 688 A.2d 1069. Plaintiff, as here, was required to sign the U-4 form as a condition of employment. Id. at 609, 688 A.2d 1069. After his discharge, he filed a CEPA and LAD claim and "challenge[d] the enforceability of the arbitration provision [in the U-4 form] on several grounds. He contend[ed] that he ha[d] a statutory right to a jury trial of his CEPA and LAD claims and that he did not knowingly waive the right to jury trial." Id. at 614-15, 688 A.2d 1069. We rejected the contention. Pointing to the United States Supreme Court's opinion in Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 29, 111 S.Ct. 1647, 1653-54, 114 L.Ed.2d 26, 39 (1991), Judge Wecker stated:
[O]nly if the statute or legislative history evidence an intention to preclude alternate forms of dispute resolution will arbitration agreements be unenforceable...
The FAA preempts any state law purporting to invalidate an arbitration agreement involving interstate commerce... In any event, there is no evidence in the text or legislative history of CEPA or LAD that members of the classes protected by those statutes cannot waive the right to jury trial by agreeing to arbitrate disputes with their employers.

[Id. at 616, 688 A.2d 1069 (citations omitted).]
Judge Wecker further noted that the U-4 arbitration provision was enforceable "even if it is literally a contract of adhesion." Id. at 620, 688 A.2d 1069. She added:
[T]he overall subject matterregistration and regulation of persons selling securities to the publicis already subject to review and oversight by the Securities and Exchange Commission ("SEC"). See 15 U.S.C.A. § 78o-3(g), (h). The widespread use of the U-4 makes its uniform interpretation and enforcement *802 a matter of substantial public interest. Accordingly, Young is bound by his agreement to arbitrate in accordance with NASD rules.

[Id. at 621, 688 A.2d 1069.]
Young was permitted to litigate his CEPA claim only because of the NASD rule which excepted "disputes involving the insurance business of any member which is also an insurance company," ibid., and reversed the dismissal of the CEPA claim on that basis only. Id. at 621-28, 688 A.2d 1069.
Plaintiff contends that in 1990, the CEPA was revised to provide for a jury trial for any aggrieved party under the Act. N.J.S.A. 34:19-5. Plaintiff further contends that this legislative action "evidences a strong legislative intent which would preclude an alternate form of dispute resolution, particularly one which did not provide for the benefit of a jury trial." However, Young and Singer were decided after the 1990 revision, 297 N.J.Super. at 605, 688 A.2d 1069; see also Bleumer, 277 N.J.Super. at 399, 649 A.2d 913 (rejecting this argument). Moreover, the right to jury trial, even under an anti-discrimination statute, does not alone control the issue of enforceability of an agreement to arbitrate. See, e.g., Garfinkel v. Morristown Obstetrics & Gynecology Assocs., 333 N.J.Super. 291, 299-300, 755 A.2d 626 (App.Div.2000); Quigley v. KPMG Peat Marwick, LLP, 330 N.J.Super. 252, 269, 749 A.2d 405 (App.Div.), certif. denied, 165 N.J. 527, 760 A.2d 781 (2000);[10]Alamo Rent A Car, Inc. v. Galarza, 306 N.J.Super. 384, 389, 703 A.2d 961 (App.Div.1997).
Plaintiff contends that even if the CEPA is not an employment discrimination statute within the meaning of the NASD Code, all claims under the CEPA should be exempt from mandatory arbitration with the NASD as a "general trend away from requiring mandatory arbitration of employment disputes" has been established. We recognize that the NASD Code was not written exclusively for New Jersey securities dealers and brokers or with the law of this State exclusively in mind. But as Singer and Young evidence, questions of arbitrability relating to the NASD Code have been decided under State law in cases like this, see Young, supra, 297 N.J.Super. at 616-17, 688 A.2d 1069; Singer, supra, 292 N.J.Super. at 404-05, 678 A.2d 1165, and we cannot subscribe to the view that the amendment which would outdate our precedent favoring Code enforcement had the impact plaintiff suggests without a greater expression of that endeavor by the NASD. Nor does the Code amendment impact longstanding state and federal policy favoring arbitration. The public policy in favor of arbitration is set forth in the Federal Arbitration Act, 9 U.S.C.A. § 2, as well as State law. See, e.g., N.J.S.A. 2A:24-1. Our State's policy in favor of arbitration is well settled. See, e.g., Garfinkel, supra, 333 N.J.Super. at 297-300, 755 A.2d 626; Quigley, supra, 330 N.J.Super. at 262, 749 A.2d 405; Galarza, supra, 306 N.J.Super. at 389, 703 A.2d 961; Young, supra, 297 N.J.Super. at 616, 688 A.2d 1069; Singer, 292 N.J.Super. at 407, 678 A.2d 1165. Any change in that policy must come from the Supreme Court or the Legislature unless preempted by federal law.

IV.
The judgment is affirmed.
NOTES
[1] Other counts of the complaint were also dismissed resulting in a final judgment, but plaintiff only addresses the CEPA claim on this appeal. The individual defendants are employees of the Fairfield Branch of Morgan Stanley Dean Witter, but are not named in the CEPA count.
[2] The specific termination date is not given in the brief or the complaint.
[3] Plaintiff does not assert that the controversy is not "eligible for submission under the Rule 10100 Series."
[4] The NASD Code was adopted pursuant to 15 U.S.C.A. § 78s(b)-(c), and is subject to SEC approval.
[5] There is no dispute regarding what the rule provides as proposed and adopted. The proposal is contained in defendants' appendix and the rule is contained in the NASD Code of Arbitration included in plaintiff's appendix. See 63 Fed.Reg. 35299 (June 29, 1998), which details that the April 1998 proposal changed the first sentence of the amendment to employ the phrase "including a sexual harassment claim" in place of "or sexual harassment." The change, in essence, was designed to make clear that "sexual harassment" was a contemplated form of employment discrimination.
[6] Plaintiff states that his "claim is governed by the Rule change which became effective on January 1, 1999.... Plaintiff's [c]omplaint was filed on April 23, 1999. It is the date the claim is filed, not the date of termination which is relevant for determining whether the amended rule applies."
[7] Defendants do not argue that State court jurisdiction is preempted by the agreement adopted pursuant to the NASD Code or regulation approved by the SEC. See Maher v. New Jersey Transit Rail Operations, Inc., 125 N.J. 455, 469-75, 593 A.2d 750 (1991).
[8] Zappasodi cites Kolb v. Burns, 320 N.J.Super. 467, 477, 727 A.2d 525 (App.Div.1999), which stated:

CEPA, like the New Jersey Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -42, is a civil rights statute. Abbamont v. Piscataway Twp. Board of Educ., 138 N.J. 405, 431, 650 A.2d 958 (1994). It is "remedial" legislation and therefore "should be construed liberally to effectuate its important social goal." Ibid. Because both CEPA and the LAD seek to eliminate "vindictive employment practices" id. at 418, 650 A.2d 958, the Court in Abbamont held that standards for imposing liability against private employers, see Lehmann v. Toys `R' Us, Inc., 132 N.J. 587, 626, 626 A.2d 445 (1993), should also be applied under CEPA as providing the "most effective intervention and prevention' of retaliatory actions against employees." Abbamont, supra, 138 N.J. at 418, 650 A.2d 958 (quoting Lehmann, supra, 132 N.J. at 626, 626 A.2d 445). Consistent with Abbamont's approach, the United States District Court, applying New Jersey law, has held that the analytical framework applied in a retaliatory discharge case under CEPA is similar to that applied in a violation of anti-discrimination statutes, such as Title VII of the Federal Civil Rights Act. Bowles v. City of Camden, 993 F.Supp. 255, 261 (D.N.J. 1998). Thus, because CEPA is anti-discrimination legislation, the elements of a cause of action under the Act are derived from the Civil Rights landscape. Ibid.
[Kolb, supra, 320 N.J.Super. at 477, 727 A.2d 525 (footnote omitted).]
[9] The NASD rules were not involved.
[10] Unlike here, a cause of action was upheld in Quigley because the U-4 was executed before the statutory amendment. See 330 N.J.Super. at 267-68, 749 A.2d 405.