# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-2531

_____

| | | |
|---|---|---|
| ING Financial Partners, f/k/a | * | |
| Washington Square Securities, | * | |
| Inc., a Minnesota corporation, | * | |
| | * | |
| Appellee, | * | Appeal from the United States |
| | * | District Court for the |
| v. | * | District of Minnesota. |
| | * | |
| Alyson Johansen, | * | [PUBLISHED] |
| | * | |
| Appellants. | * | |

_____

Submitted: April 7, 2006
Filed: May 1, 2006

_____

Before WOLLMAN, MURPHY, and COLLOTON, Circuit Judges.

_____

PER CURIAM.

Alyson Johansen appeals the district court's order granting summary judgment to ING Financial Partners, Inc., f/k/a Washington Square Securities, Inc. (ING), and permanently enjoining Johansen from pursuing her claims in arbitration. For the reasons discussed below we reverse the grant of summary judgment and vacate the permanent injunction.

In August 2000, ING hired Johansen as a Brokerage Specialist. A Registered Representative Agreement (RRA), which set forth the terms of Johansen's relationship with ING, contained the following arbitration clause:

> Any dispute, claim or controversy arising out of or relating to this Agreement, or the breach thereof, shall be settled by arbitration conducted in Minneapolis, Minnesota in accordance with the rules of the National Association of Security Dealers, Inc.

The National Association of Securities Dealers, Inc. (NASD) Code of Arbitration Procedure provides in relevant part:

> A claim alleging employment discrimination, including a sexual harassment claim, in violation of a statute is not required to be arbitrated. Such a claim may be arbitrated only if the parties have agreed to arbitrate it, either before or after the dispute arose.

See NASD Code Rule 10201(b).

Following her termination from ING in January 2003, Johansen commenced arbitration proceedings before NASD claiming sex discrimination, sexual harassment, and retaliatory discharge for whistleblowing. Over a year later, ING filed this action seeking to enjoin the arbitration on the ground that it had not agreed to arbitrate Johansen's claims. ING moved for summary judgment, and the district court granted the motion finding that the dispute was not subject to arbitration because the RRA "effectively incorporated" the NASD rules; the NASD rules require consent for arbitration of statutory employment-discrimination claims; ING did not consent to arbitration; and "[a]lthough the [RRA] says that 'all disputes' arising out of the [RRA] will be arbitrable, this statement does not negate the fact that the [RRA] is governed by the rules of the NASD." The court permanently enjoined Johansen from pursuing her arbitration claims.

We review de novo, and we disagree with the district court that the RRA unequivocally exempted Johansen's claims from the parties' agreement to arbitrate. See Madewell v. Downs, 68 F.3d 1030, 1036 (8th Cir. 1995) (standard of review); Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83 (2002) (question of arbitrability is issue for judicial determination unless parties clearly and unmistakably provide otherwise).

Although courts should generally apply ordinary state law principles in deciding whether the parties have entered an agreement to arbitrate, see Volt Info. Scis., Inc. v. Bd. of Trs., 489 U.S. 468, 477 (1989), the construction of an agreement to arbitrate is governed by the Federal Arbitration Act unless an agreement expressly provides that state law should govern, see Dominium Austin Partners, LLC v. Emerson, 248 F.3d 720, 729 n.9 (8th Cir. 2001). "[Q]uestions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983).

We believe that the RRA's arbitration provision can be construed as an agreement to arbitrate all claims arising out of or relating to the RRA, and that such an interpretation is not inconsistent with the RRA's reference to the NASD Rules. Read in context, Rule 10201(b) is merely an exception to the NASD rules' requirement that all registered members arbitrate all disputes if so requested by another member or associated person, without the need for any independent agreement between the two parties. See Littman v. Morgan Stanley Dean Witter, 766 A.2d 794, 798 (N.J. Super. Ct. App. Div. 2001) (citing answer to "Q: What exactly does the [1999] amendment do?" from NASD published document "Frequently Asked Questions Relating To Arbitration of Employment Discrimination Claims"). The Rules still contemplate that the parties might nevertheless agree to arbitrate claims that fall within the exception.

The broadly worded "any dispute" language used in the RRA's arbitration clause appears to be such an agreement, and given the federal policy favoring arbitration, the mere reference to the NASD Rules should not be interpreted to foreclose arbitration. See CD Partners v. Grizzle, 424 F.3d 795, 800 (8th Cir. 2005) (doubts about whether arbitration clause should be construed to cover a particular dispute are generally resolved in favor of arbitration); Lyster v. Ryan's Family Steak Houses, Inc., 239 F.3d 943, 945 (8th Cir. 2001) (under federal presumption of arbitrability, order to arbitrate should not be denied unless it may be said with positive assurance that arbitration clause is not susceptible of interpretation that covers asserted dispute). In referring to the NASD Rules, the parties did not specifically limit the agreement to arbitrate to those matters that NASD rules required to be arbitrated. Had the parties intended to agree to submit to arbitration only those disputes required to be arbitrated under NASD rules, they could have drafted language that unambiguously so provided, as parties have done in comparable settings. Cf. Young v. Prudential Ins. Co. of Am., Inc., 688 A.2d 1069, 1074, 1078-82 (N.J. Super. Ct. App. Div. 1997) (holding that Form U-4 agreement "to arbitrate any dispute, claim or controversy that may arise between me and my firm . . . that is required to be arbitrated under the [NASD rules]" did not require arbitration because plaintiff's dispute involved "the insurance business of any member which is also an insurance company," which is specifically excepted by NASD Rules); see also Gelco Corp. v. Baker Indus. Inc., 779 F.2d 26, 28 (8th Cir. 1985) (per curiam) (affirming district court's order denying petition to compel arbitration after finding contract narrowly drawn and relevant contractual provisions clear and unambiguous). Because the RRA's arbitration clause was not drafted to specifically limit the agreement to arbitrate to those matters that NASD rules required to be arbitrated, the reference to the NASD rules appears to relate only to the manner in which the arbitration shall be conducted, not which matters are subject to arbitration.

Those cases interpreting similar contract clauses support this interpretation of the RRA's arbitration clause. In Bailey v. Chase, No. 01-Civ. 7222, 2002 WL 826816

(S.D.N.Y May 1, 2002) (unpublished), the plaintiff moved to compel arbitration of his employment-discrimination action. In 1997, the plaintiff had signed a Registered Representative Employment Notice (RREN), which stated that, "Any claim or controversy between [plaintiff] and [the company] arising out of or relating to this Agreement, or the breach thereof and/or [plaintiff's] employment or the termination thereof shall be submitted to arbitration in accordance with the Code of Arbitration Procedure of the NASD." See id. at *1. The district court granted the plaintiff's motion to compel arbitration, holding that because the RREN--which was signed prior to the 1999 amendment that created Rule 10201(b)--unambiguously stated that all employment-related claims were to be arbitrated, the agreement "existed independent of the parties' association with the NASD, and thus the 1999 amendment does not affect the arbitrability of [plaintiff's discrimination claims]." See id. at *3. The court further noted that:

> [T]hough the agreement states that disputes between plaintiff and [the company] shall be submitted to arbitration "in accordance with the Code of Arbitration Procedure of the NASD," this reference to the NASD Code merely sets forth the procedural rules under which the arbitration is to be conducted. It does not . . . provide a basis to apply the amended version of the NASD code and thus undermine the agreement's clear intent to require that all employment-related disputes between plaintiff and [the company] shall be arbitrated.

See id.

In Zouras v. Goldman Sachs Group, Inc., No. 02-Civ. 9249, 2003 WL 21997745 (S.D.N.Y. Aug. 22, 2003), the plaintiff claimed that following the 1999 amendment, the NASD did not provide a forum for the arbitration of her Title VII claim. However, the court held that plaintiff's discrimination claim was arbitrable because the parties had previously agreed, in an employment application (before the 1999 amendment), to arbitrate "any controversy . . . that may arise out of my employment . . . in accordance with the rules [of the NASD]." See id. at *1-*3.

-5-

While the contracts in <u>Bailey</u> and <u>Zouras</u> were entered into before the 1999 amendment added Rule 10201(b), we find these cases consistent with the interpretation of the RRA language requiring "any" dispute to be arbitrated "in accordance with" NASD rules to mean only that the parties will follow NASD procedural rules.

Finally, to the extent that the RRA's arbitration provision is ambiguous as to the interplay of arbitrating "any dispute" and the effect of Rule 10201(b), the clause must be interpreted to favor arbitration, <u>see</u> <u>Moses H. Cone</u>, 460 U.S. at 24-25 (when issue concerns construction of contract language itself, any doubts concerning scope of arbitrable issues should be resolved in favor of arbitration), and against the drafter, ING, <u>see</u> <u>Mastrobuono v. Shearson Lehman Hutton, Inc.</u>, 514 U.S. 52, 62-63 (1995) (court should construe ambiguous language against the interest of the party that drafted it; reason for rule is to protect party who did not choose language from unintended or unfair result; drafter of ambiguous document cannot claim benefit of doubt).

Consequently, we hold that the district court erred by granting summary judgment to ING and by permanently enjoining Johansen from pursuing her arbitration claims. <u>See</u> <u>Manion v. Nagin</u>, 255 F.3d 535, 538 (8th Cir. 2001) (when ruling on requests for injunctive relief, court reverses only for clearly erroneous factual determinations, errors of law, or abuse of discretion). Although the court did not make any factual errors, it was mistaken in concluding that Rule 10201(b) overrode the arbitration clause in the RRA. The RRA provided for arbitration between the parties and referenced the NASD procedural rules for the purpose of indicating how the arbitration would be conducted. The RRA is thus consistent with the strong federal policy favoring arbitration.

Accordingly, we reverse the district court's order granting summary judgment, vacate its order of permanent injunction, and remand for further proceedings.

_____